[Civ. No. 27525. Fourth Dist., Div. Two. Dec. 2, 1982.]

C-Y DEVELOPMENT COMPANY et al., Plaintiffs and Appellants, v.
CITY OF REDLANDS, Defendant and Respondent.

COUNSEL

Surr & Hellyer and Veronica M. Gray for Plaintiffs and Appellants.

Best, Best & Krieger and Barton C. Gaut for Defendant and Respondent.

OPINION

**TROTTER, J.**—Plaintiffs C-Y Development Company (C-Y) and Henry and Gloria Lopez (Lopez) petitioned the superior court for a writ of mandate to require the City of Redlands to issue a building permit to Lopez. The trial court denied the petition and plaintiffs appeal.

FACTS

In 1978, the voters of Redlands adopted Proposition R, an initiative measure. Proposition R restricted development in the City of Redlands. Proposition R stated that, with certain exceptions, building permits would be issued for only 450 new units per year.

In order to regulate competition for the limited number of building permits, the city council passed ordinance No. 1680. Ordinance No. 1680 provided for, among other things, a point rating system for proposed developments. Only those developments with overall superior point ratings would be allocated any of the limited number of building permits. The point rating system was amended by ordinance No. 1717 and by ordinance No. 1742, but the basic point rating system remained intact.

Proposition R provided certain exceptions to the 450-unit limit. "This limitation shall not apply to individually constructed single family homes, multi-family dwellings containing four dwelling units or less, or commercial and industrial construction. Developments in which more than four of the dwelling units are constructed by the subdivider of any major subdivision, or by his agents or contractors shall not be considered to be individually constructed."

Ordinance No. 1680 defined certain properties as exempt from competition for permits under the point rating system, including "[t]he construction of a single-family residence on a single lot which the owner, developer, or agent did not create through the subdivision process."

C-Y owns a 14-lot subdivision in the City of Redlands. In an attempt to bring its development within the exemption from the permit allocation process, C-Y planned to build only four units in the development. C-Y intended to sell the remaining lots to individuals who would then build their own custom homes. C-Y and Lopez entered into a contract for the sale of lot 6, conditioned on Lopez being able to obtain a building permit for a single-family residence.

Lopez applied for a building permit. The application was denied on the ground that C-Y and Lopez had failed to submit a residential development application (RDA) pursuant to the permit allocation and point rating systems.

C-Y and Lopez sought a writ of mandate to compel the City of Redlands to issue the building permit to Lopez. The trial court denied the petition and plaintiffs appeal.

### DISCUSSION

■ The issue before us is relatively simple: Did C-Y's plan of building only four units and selling the remaining lots to individuals come within the exception to the building permit limitation?

The City of Redlands argues that C-Y's plan is a subterfuge to get around the building restriction intent of Proposition R.

We are clearly faced with a question of statutory construction. ■ The construction of a municipal initiative or ordinance is governed by the same rules as the construction of statutes. (*In the Matter of Yick Wo* (1885) 68 Cal. 294, 303 [9 P. 139], revd. on other grounds *sub nom. Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].)

■ As a general rule, the court must interpret a statute by looking to the plain meaning of the words of the statute. "It is elementary that the meaning of

a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms." (*Caminetti* v. *United States* (1917) 242 U.S. 470, 485 [61 L.Ed. 442, 452, 37 S.Ct. 192].)

■ The language of Proposition R is not vague or ambiguous. Proposition R clearly states: "Section 3. Henceforth, further major subdivision residential development shall be limited in number in each calendar year to a total of four hundred fifty (450) dwelling units including, single family, multiple family, and mobile homes. This limitation shall not apply to individually constructed single family homes, multi-family dwellings containing four dwelling units or less, or commercial and industrial construction. Developments in which more than four of the dwelling units are constructed by the subdivider of any major subdivision, or by his agents or contractors shall not be considered to be individually constructed."

Conversely stated, where a subdivider of a major subdivision constructs four or fewer units of a development, those units or others built by individual owners are considered to be individually constructed. Clearly, the main target of the legislation is to control the quality of construction of large subdivisions. A single-family dwelling built by an individual owner is "individually constructed." A duplex, triplex, or fourplex is "individually constructed." Even a developer can build "individually constructed" homes, so long as the number of units it builds in any development is four or less. All of these "individually constructed" units are exempt from the 450-unit annual limitation.

C-Y and Lopez clearly complied with Proposition R's exemption provision. C-Y planned to construct no more than four dwelling units in the development. Such units would therefore be "individually constructed" and exempt from the allocation process. Lopez is not the agent of C-Y. Lopez is an individual prospective owner who plans to build a single-family dwelling on a single lot. Lopez will need to secure financing and a construction contract completely independent of C-Y. Lopez's proposed dwelling is clearly "individually constructed" and exempt from the 450-unit limitation. Thus, no requirement may be imposed that either C-Y or Lopez must obtain a competitive point rating evaluation as a condition precedent to the issuance of a building permit.

■ The City of Redlands argues, however, that this "plain meaning" is clearly contrary to the legislative intent. Where the "plain meaning" is clearly contrary to the legislative intent, the statute should not be given its "plain meaning."[1] The City of Redlands contends that the legislative intent of Prop-

---

[1] See *In re W. R. W.* (1971) 17 Cal.App.3d 1029, 1033 [95 Cal.Rptr. 354], wherein the court stated: "Where the language of a statute is clear and unambiguous, its meaning plain, and there

osition R is to exempt from the growth-limitation provisions of the initiative as "individually constructed single-family dwellings" only those homes built on single lots already existing before Proposition R took effect, and to make subject to the allocation of limited building permits all constructions on lots created by subdivision. The City of Redlands relies for this interpretation of legislative intent on the language of ordinance No. 1680, and on the declarations, admitted before the trial court, of two of the drafters of Proposition R.

Ordinance No. 1680 allows for the following exemptions from the permit allocation process:

"1. A development consisting of four or fewer single-family dwelling units.

"2. The construction of a fourplex or a lesser number of multiple dwellings on a lot which the owner, developer, or agent did not create through the subdivision process.

"3. The construction of a single-family residence on a single lot which the owner, developer, or agent did not create through the subdivision process.

"4. Projects undertaken to meet prior commitment of the City to provide dwelling units for low-income families or persons.

"5. The construction of buildings to be used for industrial or commercial purposes."

The City of Redlands contends that because C-Y, the owner and developer, created the lot by subdivision, the proposed construction of Lopez's home must obtain a point rating evaluation in competition for one of the 450 building permits.

The City of Redlands reads the language of ordinance No. 1680 to show a legislative intent that lots created by subdivision are not exempted from the competitive process for the 450 building permits. The City of Redlands' analysis appears to be correct as to the legislative intent of the city council in enacting ordinance No. 1680. It does not, however, reflect the legislative intent of the voters in enacting Proposition R. Ordinance No. 1680, which was written and adopted by the city council *after* Proposition R had been passed, is of no value whatsoever in determining the legislative intent of the voters at the time Proposition R was passed.

is no apparent conflict with the legislative intent, there is no need for construction by the court and the courts should not add to or alter that language." From this, the City of Redlands derives the principle that if there is a clear conflict with the legislative intent, the plain-meaning rule should not be observed.

The purpose of ordinance No. 1680 to include all subdivided lots in the allocation process, including single lots on which an individual owner builds a single-family home, is plainly contrary to the language of Proposition R. Proposition R makes no distinction between preexisting lots and subdivided lots. The only reference to the characterization of lots as subdivided or otherwise is the statement that "[d]evelopments in which more than four of the dwelling units are constructed by the *subdivider* of any major *subdivision,* or by his agents or contractors shall not be considered to be individually constructed." (Italics supplied.) The only conclusion which can be drawn from the language of Proposition R is that even units built on subdivided lots by a subdivider may be "individually constructed," and therefore exempt, if no more than four units are constructed by the subdivider. Ordinance No. 1680 attempts to make certain constructions subject to the 450-unit restriction, when they are clearly exempt from the limitation under Proposition R itself. In effect, the exemption provision of ordinance No. 1680 would amend Proposition R to exempt only units constructed on preexisting lots, while limiting all construction on subdivided lots. It is well settled that an ordinance adopted by initiative may not be amended or repealed except by a vote of the people, absent a provision otherwise in the initiative ordinance. (Elec. Code, § 4013.) There is no provision in Proposition R for its amendment or repeal without the vote of the people. To the extent that ordinance No. 1680 purports to include in the limitation constructions which are exempted under the terms of Proposition R, the exemption sections of ordinance No. 1680 are invalid.

The City of Redlands' attempt to rely on the declarations of two of the drafters of Proposition R is likewise of no avail. The declarations purport to show that only preexisting lots were meant to be exempted from Proposition R, but all lots created by the subdivision process were meant to be covered by the 450-unit restriction.

■ The general rule is that, in determining legislative intent, the views of individual drafters are not considered as grounds upon which to construe a statute. There is no necessary correlation between what the drafter understood the text to mean and what the voters enacting the measure understood it to mean. (2A Sutherland, Statutory Construction (4th ed. 1973) § 48.12, pp. 214-215.) An exception has sometimes been made where the drafters' views were clearly and prominently communicated to the legislators at the time the measure was being considered for enactment, on the theory that there was reason to believe that the other legislators were influenced in their view of the bill by the drafters' communicated views, but the exception has been largely confined to a setting in the Legislature where a limited number of legislators may clearly be expected to be so influenced. (*Ibid.*) The exception is also clearly confined to views expressed while the measure was being considered, and does not concern expressions of individual motivation made after the fact. (2A

Sutherland, *supra,* §§ 48.12, 48.17, pp. 214-216, 223-224.) The declarations are thus inadmissible as aids in ascertaining legislative intent.

The city has failed to point to anything which shows that the plain meaning of Proposition R is clearly different from the legislative intent of the voters in enacting Proposition R. In fact, the only extrinsic aid offered which can truly be said to show a legislative intent contemporaneous with the consideration and enactment of Proposition R is the ballot argument in favor of the proposition. The ballot argument stated:

"[With Proposition R] [t]he people of Redlands can restore reasonable growth rates. Proposition R provides for a city growth rate of 450 tract units a year, requires that the city competitively evaluate and select the best planned tracts, places a reasonable limit of 150 on the extension of city services to new dwelling units in the county, and requires that existing tentatively approved tracts also be competitively evaluated. No restriction is placed on building individual homes, small apartments, or commercial buildings.

"Proposition R will create a better Redlands since:

"(1) Competition for the 450 tract units will assure better tract designs,

"(2) The City will control how we grow instead of the developers,

"(3) Our existing, older, and smaller homes will become more valuable and saleable,

"(4) Inflationary land and tract speculation will decrease,

"(5) Quality low income housing can be provided,

"(6) Building of individually constructed homes will be encouraged, and

"(7) The City will have a better chance to physically, socially, and economically adjust to new growth as it occurs."

The ballot statement was signed by, among others, one of the drafters from whom the city obtained a declaration discussed above. Yet the ballot statement states that there will be no restriction on building individual homes, making no distinction for subdivided lots. The thrust of the argument is that Proposition R will restrict tract building and improve the quality of the limited tract development which will be allowed. There is nothing whatsoever in the ballot statement to indicate that individual owners of subdivided lots will be restricted in building their own homes. There can therefore be no legislative intent that

Proposition R be so read. Neither the language of Proposition R itself nor the ballot argument will bear such an interpretation.

The plain meaning of the words of Proposition R do not clearly conflict with the ascertainable legislative intent. (See *In re W. R. W.*, *supra*, 17 Cal.App.3d 1029, 1033.) C-Y and Lopez complied with the provisions of Proposition R so as to come within the exemption from the building permit allocation.

■ The City of Redlands next argues that a writ of mandate will not lie to compel issuance of a building permit, which is a discretionary rather than a ministerial act. (*Anderson* v. *Phillips* (1975) 13 Cal.3d 733, 736-737 [119 Cal.Rptr. 879, 532 P.2d 1247].) "Mandate is an appropriate remedy by which to compel the exercise of discretion by a court or governmental officer. [Citations.] . . . [¶] Mandate does not lie to control the exercise of discretion. [Citation.] . . . Mandate is, nonetheless, appropriate to compel an officer to exercise his discretion and to exercise it under a proper interpretation of the applicable law." (*Ibid.*)

The sole reason given by the City of Redlands for denying the building permit was that C-Y or Lopez had not applied for allocation of a building permit pursuant to the point rating system. This we have held, under a proper interpretation of the law, is an invalid requirement upon C-Y's or Lopez's proposed construction. Therefore the writ will lie to compel the issuance of the building permit to Lopez.

One or two points remain to be mentioned. ■ First, both C-Y and Lopez have standing to bring the within writ action. Both plaintiffs have a substantial interest over and above any interest held by the public at large in the substance of this litigation. (*Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].) Lopez is the buyer and C-Y the seller of the lot for which the building permit is sought. By reason of the real estate purchase contract C-Y is obligated to sell and Lopez is obligated to buy the lot in question. C-Y is the legal owner of the property. As the person obligated to buy the property, Lopez has an equitable interest in the property. (See *White* v. *Gilman* (1903) 138 Cal. 375 [71 P. 436].) These relationships, as buyer and seller, are uniquely affected by the governmental action to grant or deny the building permit. C-Y and Lopez have standing to seek the writ of mandate.

Finally, Lopez is a proper owner to apply for the building permit. To hold otherwise is to put form over substance. Lopez is obligated by the contract to purchase the property and has an equitable interest in the property. We note that the building permit was not denied on the ground that Lopez is an improper ap-

plicant. Moreover, Lopez as owner of the property will construct a single-family home on the property.

The judgment is reversed with directions to the trial court to enter an order granting the writ of mandate to compel issuance of the building permit.

Kaufman, Acting P. J., and McDaniel, J., concurred.