[No. D025853. Fourth Dist., Div. One. Sept. 26, 1996.]

BART THOMSEN, Plaintiff and Respondent, v.
CITY OF ESCONDIDO, Defendant and Appellant.

**COUNSEL**

Endeman, Lincoln, Turek & Heater, Donald R. Lincoln and Jeffrey Epp for Defendant and Appellant.

Callahan, Blaine & Williams and Jim P. Mahacek for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—This case involves the interpretation of an initiative measure establishing mobilehome park space rent review in Escondido (Proposition K; codified in section 29-101 et seq. of the City of Escondido's Municipal Code) (the ordinance). Escondido officials (the City) interpreted the ordinance as regulating the amount of rent this mobilehome park owner, plaintiff and respondent Bart Thomsen, could charge prospective purchasers of existing coaches in his park. Thomsen disagreed, asserting the ordinance did not limit his right to negotiate mutually agreeable rents with prospective purchasers, and brought an action seeking injunctive relief to prevent the City from enforcing the ordinance in situations involving prospective purchasers. In effect, he contends the ordinance does not provide that the rents to be charged to incoming tenants upon sale or transfer of a mobilehome must be maintained at the levels currently charged to current tenants (i.e., the ordinance does not provide for "vacancy control").

The superior court agreed with Thomsen and enjoined the City from applying the ordinance to preclude mobilehome park owners from charging prospective purchasers rents exceeding those permitted for current tenants under the city's regulatory scheme. The City appeals, contending that even though the ordinance does not contain any express vacancy control provision, such a provision should be read into the ordinance, on the theory that it regulates mobilehome space rents across the board without regard to any sale or transfer of individual coaches. Based on our reading of the ordinance in light of legislative history and interpretive case law, we affirm the order.

I

### FACTUAL BACKGROUND

In June 1988, Escondido voters adopted Proposition K, setting base rents for mobilehome park spaces as of specified dates, establishing procedures for mobilehome park owners to apply for rent increases, and creating a mobilehome park rental review board (the rental review board) to adjudicate rent increase applications. The initiative defined "[t]enant" as "a person who has a tenancy in a mobilehome park." (Escondido Mun. Code), § 29-101;[1] see generally, *Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 36-37 [41 Cal.Rptr.2d 393].)

Perhaps inevitably, after passage of Proposition K, disputes arose whether mobilehome park owners could require residents or prospective residents to

---

[1]Proposition K followed the enactment of the Mobilehome Residency Law (Civ. Code, § 798 et seq.). Under that statutory scheme, "homeowner" is defined as "a person who has a tenancy in a mobilehome park under a rental agreement." (Civ. Code, § 798.9.) Certain

sign long-term leases that were exempted from rent control under Civil Code section 798.17. (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra*, 35 Cal.App.4th at p. 37.) In August 1988, Escondido's city council enacted ordinance No. 88-50, prohibiting mobilehome park owners from requiring either existing or prospective homeowners to enter into long-term leases that were exempt from rent control.

A 1990 legislative amendment to Civil Code section 798.17 by Senate Bill No. 2009 appeared to permit mobilehome park owners to require prospective homeowners to sign long-term leases that were exempt from rent control. (Stats. 1990, ch. 1046.) In response, Escondido repealed ordinance No. 88-50. However, Senate Bill No. 2009 was short-lived. In 1991, by further amendment to Civil Code section 798.17, the Legislature repealed Senate Bill No. 2009 with the intent to reinstate state law existing before enactment of such bill to avoid any unintended preemption effect. (Stats. 1991, ch. 24, § 1; see message from the Governor dated May 6, 1991, in 7 West's Ann. Civ. Code, foll. § 798.17 (1996 pocket supp.) p. 40.) Escondido's city council then adopted as an urgency matter ordinance No. 91-19, essentially reenacting ordinance No. 88-50.[2] (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra*, 35 Cal.App.4th at p. 37.)

In May 1995 we struck down ordinance No. 91-19 as facially invalid. (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra*, 35 Cal.App.4th 32.) We concluded ordinance No. 91-19 constituted an improper "legislative" amendment by the city council of a municipal initiative ordinance adopted by the voters, to wit, Proposition K. (35 Cal.App.4th at pp. 36, 39-43; Elec. Code, former § 4013, now Elec. Code, § 9217.) It went beyond the original scope of Proposition K by adding to the definition of tenants affected by the initiative. (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra*, 35 Cal.App.4th at p. 42.) We also concluded that with respect to existing homeowners, ordinance No. 91-19 was preempted by Civil Code section 798.17, which covered "the field of setting conditions on the right of a park owner and existing homeowners to enter into rent control-exempt leases . . . ." (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra*, at pp. 36, 43-47.)

Thomsen owned a mobilehome park within the City's jurisdiction. In June 1995, the City wrote Thomsen's park manager that under Proposition K "if

---

long-term leases in excess of 12 months duration are statutorily exempt from local rent control regulation. (Civ. Code, § 798.17.)

[2]Section 1 of ordinance No. 91-19 provided: "For the purpose of implementing the Rent Protection Ordinance the term 'Tenant' shall be understood to mean not only a person who has an existing tenancy in a mobile home park but also a person who has purchased or is in the process of purchasing or otherwise acquiring a mobilehome that will remain at that particular park."

you offer a new resident a month to month tenancy or a lease of 12 months or less for a space in your park, that resident would be entitled to the same space rent as the present tenant. Under Proposition K the only way you may increase a space rent on a period of tenancy 12 months or less is to apply for an increase through the Rent Review Board. Should you raise your rents to new tenants for tenancy of 12 months or less you will be in violation of the City's Rent Control Ordinance and subject to criminal action."[3]

In response to a tenant complaint, the City also wrote Thomsen: "Escondido Municipal Code Section 29-103 prohibits the park owner from demanding rent in excess [of that] in effect for said space on January 1, 1986. Any increase in space rent must be approved by the Rent Review Board. The only exception would be that the owner could charge the last rent on the space if the space rent had been established by a long term lease. [¶] In the present case, the previous resident was under a month to month agreement. The fact that the previous resident sold the mobilehome does not relieve you and your manager of the obligations of complying with the Rent Protection Ordinance."

II

### SUPERIOR COURT PROCEEDINGS

In January 1996, Thomsen sued the City for declaratory relief and injunction. Thomsen's complaint prayed for a declaration that Proposition K "does not prevent Plaintiff from charging a prospective purchaser, upon the prospective purchaser's initial entering into the Park, any amount mutually agreeable between the Parties . . . ." The complaint also sought an injunction restraining the City "from enforcing, or attempting to enforce, or from spending taxpayer funds to enforce any civil or criminal penalties upon Plaintiff for charging prospective purchasers rent in excess of that in effect on January 1, 1986, or which has otherwise been approved by the Mobilehome Rent Review Board, as an initial entry rent . . . ."

In February 1996, asserting the City threatened civil and criminal action against him, Thomsen filed a motion for preliminary injunction.[4]

In March 1996 Thomsen's motion for preliminary injunction came on for hearing. After oral argument, the court preliminarily enjoined the City from

---

[3]Section 29-108 of the ordinance provides for civil and criminal penalties for violation of its terms.

[4]On appeal, the City has argued Thomsen's action was not timely filed and he lacks standing to pursue it, as the ordinance was enacted in 1988, before he acquired his interest in the property in 1991 and filed this action in 1996. These arguments lack merit, as interpretation of an ordinance is a proper subject for declaratory relief (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 637 [12 Cal.Rptr. 671, 361 P.2d 247]), and injunctive relief is

enforcing or attempting to enforce Proposition K "in such a manner as to prevent mobilehome park owners from entering into rental or lease agreements with prospective purchasers of mobilehomes which will remain in mobilehome parks after sale at such entry level rental rates as may be mutually agreeable between the mobilehome park owners and the prospective purchasers without such entry rents being limited by" Proposition K. The City appeals the order.

## III

### STANDARDS OF REVIEW: INJUNCTION AND STATUTORY ANALYSIS

■ A court may properly enjoin an attempt to apply a valid ordinance to conduct not within its terms. (*MacLeod* v. *City of Los Altos* (1960) 182 Cal.App.2d 364, 369 [6 Cal.Rptr. 326].) ■ "Ordinarily, a party challenging the grant of a preliminary injunction must demonstrate that the trial court abused its discretion in evaluating the interrelated factors of (1) 'the likelihood that the plaintiff will prevail on the merits at trial,' and (2) 'the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued.' [Citations.] In the case at hand, however, plaintiff . . . invokes the principle that '*when the matter is solely a question of a violation of law the standard of review is not abuse of discretion but whether statutory or constitutional law was correctly interpreted and applied by the trial court.*' [Citation.]" (*Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1094 [271 Cal.Rptr. 44], italics added.)

■ Thomsen essentially contends the superior court correctly enjoined the City's attempt to regulate activities assertedly not covered by the language of Proposition K. His complaint seeks injunctive and declaratory relief and thus predominantly presents questions of law. Because these issues involved interpretation of the terms of Proposition K, a legislative enactment, de novo review is proper. (*Pacific Landmark Hotel, Ltd.* v. *Marriott Hotels, Inc.* (1993) 19 Cal.App.4th 615, 624 [23 Cal.Rptr.2d 555].)

■ Well-accepted rules of statutory interpretation apply: We must "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where

available where enforcement of an ordinance would injure the plaintiff's rights (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 678, fn. 2 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]). Thomsen alleged and showed by way of declaration that the City was threatening him with civil and criminal penalties within a year of the filing of this action. His action was properly filed.

there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) "In construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration. [Citations.] '[W]e are mindful that the goal of statutory construction is ascertainment of legislative intent so that the purpose of the law may be effectuated.' [Citation.]" (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].)

To determine legislative intent, "we first look to the language used. When that language is clear and unambiguous, there is no need for construction. If the language is susceptible to more than one reasonable interpretation, we may utilize various extrinsic aids, including the objects to be achieved by the statute, the legislative history, public policy and the statutory scheme of which the statute is a part. [Citation.]" (*People* v. *Rackley* (1995) 33 Cal.App.4th 1659, 1665-1666 [40 Cal.Rptr.2d 49].) Ballot arguments are such a permissible extrinsic aid for determining legislative intent. (*C-Y Development Co.* v. *City of Redlands* (1982) 137 Cal.App.3d 926, 932-933 [187 Cal.Rptr. 370].) In general, courts will not presume an intention to legislate by implication. (*People* v. *Welch* (1971) 20 Cal.App.3d 997, 1002 [98 Cal.Rptr. 113].)

IV

DISCUSSION

The parties do not dispute that Proposition K is facially valid or that a municipality may constitutionally include "vacancy control" in a rent control scheme.[5] Instead, the parties dispute the coverage of Proposition K. Thomsen interprets the initiative ordinance as containing nothing precluding his raising the space rent pursuant to negotiations with prospective purchasers of coaches. He draws a distinction between the protections against economic eviction of current tenants, as enacted by the ordinance, and a separate concept of investment protection for those current tenants who wish to sell

[5]The United States Supreme Court has held Proposition K to be facially valid when challenged under the Fifth Amendment to the United States Constitution as a physical taking. (*Yee* v. *Escondido* (1992) 503 U.S. 519 [118 L.Ed.2d 153, 112 S.Ct. 1522], affirming *Yee* v. *City of Escondido* (1990) 224 Cal.App.3d 1349 [274 Cal.Rptr. 551]; see also *Sandpiper Mobile Village* v. *City of Carpinteria* (1992) 10 Cal.App.4th 542 [12 Cal.Rptr.2d 623].)

or transfer their mobilehomes to prospective or incoming tenants at favorable sale prices, as affected by rent levels.

In contrast, the City interprets the ordinance as containing nothing exempting from its regulatory scope the space rents charged to prospective purchasers. To determine the intended scope of the ordinance with regard to vacancy control/vacancy decontrol, we first set forth its relevant terms, then discuss interpretive case law, then apply rules of statutory analysis.

## A

### The Initiative Ordinance

Escondido Municipal Code section 29-103, added by Proposition K, states: "Except as hereinafter provided, an owner [of a mobilehome park] shall not demand, accept, or retain rent for a mobilehome space exceeding the rent in effect for said space on January 1, 1986. If a previously rented mobilehome space was not rented on January 1, 1986, the owner shall not demand, accept, or retain rent for said space exceeding the rent in effect during the last month the space was rented prior to January 1, 1986. If a mobilehome space is rented for the first time after January 1, 1986, the owner shall not demand, accept, or retain rent for said space exceeding the rent first charged for the space. No owner shall send a notice containing the specific amount of a proposed rental increase prior to receiving approval of a rent increase from the [rental review] board. Except as herein provided, an owner shall not demand, accept or retain rent exceeding the rent in effect on January 1, 1986, for a mobilehome space that was not regulated by this section prior to January 1, 1986. If such mobilehome space was not rented on January 1, 1986, the owner shall not demand, accept or retain rent for said space exceeding the rent in effect during the last month the space was rented prior to January 1, 1986."

Escondido Municipal Code section 29-104 sets forth procedures for a park owner's application for space rent increases, including notice to affected tenants, and in subdivision (g), states a nonexclusive list of factors for the rental review board to consider in determining whether to allow such an increase (e.g., comparable rents, changes in taxes, charges, and expenses pertaining to the spaces, etc.).

## B

### Case Law Interpretation

The parties engage in a spirited debate about whether earlier cases have effectively decided Proposition K includes "vacancy control." (E.g., *Yee* v.

*Escondido, supra,* 503 U.S. 519; *Westwinds Mobile Home Park* v. *City of Escondido* (Jan. 13, 1995) D017803 [nonpub. opn.]; *Yee* v. *City of Escondido* (Dec. 21, 1994) D017840 [nonpub. opn.]; *Yee* v. *City of Escondido, supra,* 224 Cal.App.3d 1349.)[6] For example, in *Yee* v. *City of Escondido, supra,* D017840, by way of introduction we referred to the ordinance as not including sale or transfer of a mobilehome as a ground for a rental increase. This was apparently a reference to section 29-104, subdivision (g) of the ordinance, listing the factors the rental review board may consider in ruling on rent increase requests. Similarly, in *Westwinds Mobile Home Park* v. *City of Escondido, supra,* D017803, we referred to our earlier opinion in that matter, *Westwinds Mobile Home Park* v. *Mobilehome Park Rental Review Bd.* (1994) 30 Cal.App.4th 84, 95 [35 Cal.Rptr.2d 315], as establishing that "the 'vacancy control' provisions of the City's ordinance do not deprive Owner of 'substantially all economically viable uses' of its land." On review of a pleadings question concerning alleged unconstitutional taking of private property, we were assuming in that opinion that the owners' allegations as pleaded were true, including the scope of the statute. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 319 [216 Cal.Rptr. 718, 703 P.2d 58].)

Having reviewed those earlier cases, we conclude they did not directly decide the issue of whether the terms of Proposition K in fact provided for vacancy control or vacancy decontrol. Rather, they were appeals from orders sustaining demurrers without leave to amend, and the analysis in those opinions assumed for purposes of discussion that the allegations in the pleadings were true, e.g., that the ordinance accomplished a taking of private property though vacancy control language. Until this court was required to reach the merits of the park owners' attacks on the ordinance in *Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra,* 35 Cal.App.4th 32, only pleadings questions were decided, and they do not dispose of the issues presented here.

In *Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra,* 35 Cal.App.4th 32, this court considered Elections Code and preemption doctrine challenges to the City's ordinance No. 91-19, enacted to "clarify" Proposition K. The stated purposes of ordinance No. 91-19 and its direct predecessor, ordinance No. 88-50, were to prevent a mobilehome park owner from forcing a prospective coach purchaser to sign a long-term lease, exempting the space from rent control, as a condition of the park owner's approving the sale. The urgency declarations for these measures stated they were "intended to deal with hardships on purchasers and prospective purchasers, as well as sellers, of mobilehomes." (*Mobilepark West Homeowners*

---

[6]Pursuant to the City's request, we have taken judicial notice of the nonpublished opinions in *Yee* and *Westwinds, supra.*

*Assn., supra,* 35 Cal.App.4th at pp. 37-38.) Toward this end, ordinance No. 91-19 included a redefinition of the term "Tenant": It "shall be understood to mean not only a person who has an existing tenancy in a mobile home park but also a person who has purchased or is in the process of purchasing or otherwise acquiring a mobilehome that will remain at that particular park."

Concluding ordinance No. 91-19 impermissibly expanded Proposition K's definition of tenant to include purchasers or prospective coach purchasers and placed new requirements on park owners and tenants for entering into long-term leases exempt from rent control, we determined the ordinance was invalid as constituting an improper attempt to amend a voter-approved initiative and also as preempted by Civil Code section 798.17. (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra,* 35 Cal.App.4th at pp. 38, 41-43.) We were not directly presented with the issue now before us, to wit, whether Proposition K prohibits owners from raising the space rent charged to prospective purchasers absent compliance with the initiative ordinance's regulatory mechanisms or, alternatively, entry into a long-term lease exempted from rent control by Civil Code section 798.17.

Nevertheless, in *Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra,* 35 Cal.App.4th at pages 38, 41-43, it was not possible to resolve the specific substantive challenges presented without making some determinations about the scope of coverage of Proposition K. We said: "Along these lines, the City argues that the broad scope of coverage of Proposition K, control of mobilehome space rent increases, is subject to 'clarification' by the terms of ordinance No. 91-19. *However, that ordinance goes beyond the original scope of Proposition K by adding to the definition of tenants affected by the initiative,* and by requiring owners to offer certain options and disclosures before exempt leases may be executed. Thus, more than just clarification was accomplished by ordinance No. 91-19. Nor is the City's argument well taken that ordinance No. 91-19 was consistent with the voters' intent in enacting Proposition K, by granting as many people as possible the protections of the rent control ordinance, *because the initiative measure adequately defined its scope of coverage without requiring the assistance of the city council in enacting follow-up ordinances.* We cannot say the ordinance advanced the purposes of Proposition K when it expanded its scope and added new provisions, rather than merely implementing it. [Citation.] We therefore find the authority regarding permissible legislative clarification of ambiguous initiatives to be distinguishable here; Proposition K is not an ambiguous measure *in its definition of the 'tenant' to be governed by the rent protection ordinance (not including prospective tenants)." (Mobilepark West Homeowners Assn., supra,* 35 Cal.App.4th at pp. 42-43, italics added, fn. omitted.)

With regard to the issues currently under consideration, the importance of these statements is that Proposition K was intended primarily to deal with the situation of rent increases proposed for current tenants, not prospective tenants. As Thomsen points out in his respondent's brief, there is a distinction between the concept of rent control intended to prevent economic eviction of current tenants, and the concept of investment protection for those current tenants who wish to sell or transfer their mobilehomes to prospective or incoming tenants at favorable rent levels (and, hence, a favorable sale price). It is clear that the voters intended to establish as law the former concept (rent control intended to prevent economic eviction of current tenants). To determine if the latter concept (investment protection for current tenants through their sales to prospective tenants *as subject to vacancy control*) was also enacted into law by Proposition K, we turn to statutory interpretation rules.

## C

### *Application of Rules*

■ According to the City, Proposition K regulates all rents charged for spaces in mobilehome parks (except those subject to long-term leases, Civ. Code, § 798.17) and provides that *any* increase in such rents must be approved by the City's rental review board. (Escondido Mun. Code, § 29-103.) The City claims the ordinance does not impose differing regulation depending on whether a coach has been sold or transferred or whether the "status" of a coach owner is existing or prospective; under this approach, when a coach located on a park space is sold or transferred, the existing regulated rent for that space would continue in the interim until the prospective purchaser becomes a tenant and the park owner then secures approval from the City for a rent increase. Under this view, this ordinance effectively imposes vacancy control even without an express vacancy control provision.

There are several major problems with such a theory. First, as discussed above, existing case authority interpreting Proposition K has not established that vacancy control inheres in the ordinance. Second, we are not to presume legislation of such a regulatory scheme by implication. (*People v. Welch*, *supra*, 20 Cal.App.3d at p. 1002.) Third, the plain language rule of statutory interpretation, with regard to the term "rent for a mobilehome space" is not of assistance where other portions of the ordinance deal with the notice and hearing to be given to tenants of affected spaces (for which rent increases are sought), thus creating ambiguities in the statutory scheme.

Vacancy control is a statutory protection for both current tenants, who may wish to sell their mobilehomes with favorable rental rates attached, and

for prospective tenants, who may wish to buy into a mobilehome park at the most favorable rental rate as well as a favorable purchase price. To some extent, these interests are intertwined. Some rent control schemes have clearly stated an intent to impose such investment protections for current tenants who wish to sell their coaches. For example, in *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside* (1984) 157 Cal.App.3d 887, 911 [204 Cal.Rptr. 239], this court upheld a rent control ordinance against numerous challenges, noting inter alia that the ordinance took into account "the proprietary interests mobilehome owners have individually and cumulatively in their homes and appurtenances." We noted in a footnote that the ordinance acknowledged the investments that mobilehome owners have in their coaches, and that continuing, uncontrolled rent increases jeopardize such investments, and are one of the evils sought to be addressed by that ordinance. (*Id.* at p. 911, fn. 9; see also *Carson Harbor Village Ltd.* v. *City of Carson* (9th Cir. 1994) 37 F.3d 468, 471 [referring to legislative findings in a rent control law that the purchase of a mobilehome is a substantial investment, and the purpose of the law included protecting such investments on sale of the homes].)

Here, however, the ballot arguments for Proposition K did not discuss the investment protection issue, instead focusing in major part on the argument that "[c]itizens living in mobilehomes on fixed incomes are facing economic eviction. They need your help. [¶] They own their homes. But they rent the space the homes are on. Their homes are not really mobile . . . [a]nd there is no place to move. So they are required to pay whatever rent the land speculator might demand." (San Diego County Ballot Pamphlet, Argument in Favor of Prop. K, Primary Elec. (June 7, 1988).) From this language it does not appear that the electorate was thinking in terms of protecting the long-term investments of mobilehome owners.

Moreover, the City's interpretation of Proposition K does not account for its definition of "tenant" as "a person who has a tenancy in a mobilehome park." (Escondido Mun. Code, § 29-101.) Tenants are afforded certain procedural and substantive protections under the ordinance regarding notice of requested rent increases over those allowed by Escondido Municipal Code section 29-103, and nonpayment of illegal rents. (Escondido Mun. Code §§ 29-104, 29-107.) However, Escondido Municipal Code section 29-103 simply refers to rents payable for a space, and does not discuss the tenants who occupy such spaces. "[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) As the parties' widely divergent interpretations demonstrate, this portion of the ordinance is ambiguous, and it is therefore proper to look at extrinsic aids to interpret these sections together. The ballot

arguments indicate that the regulatory scheme of the ordinance is geared toward protecting current tenants from economic eviction. Spaces do not pay rent, people do. Read as a whole, the ordinance protects people during their tenancies at the mobilehome park.

Toward the end of such tenancies, a coach owner may wish to transfer or sell the coach, but such events do not currently bring the prospective tenants into the scope of the ordinance. The City expressly recognized this when it enacted ordinances Nos. 88-50 and 91-19 to bring such persons within the protection of the initiative ordinance. (See fn. 2, *ante.*) We found, however, that those enactments were not permissible legislative amendments of a voter-approved initiative and also were preempted by Civil Code section 798.17. (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra,* 35 Cal.App.4th at pp. 38, 41-43.) Once again, the City's current interpretation of section 29-103 would broaden the scope of coverage of Proposition K to include prospective tenants, a result not properly to be accomplished by implying vacancy control into the measure. We are left to conclude that Proposition K does not either expressly or impliedly provide for vacancy control, i.e., continued regulation of rents at the current tenant's level upon sale or transfer of a mobilehome.[7] The trial court correctly issued the preliminary injunction. Since that is the only order before us on this appeal, it will be upheld and the trial court is directed to conduct such further proceedings as are required to achieve a final judgment consistent with the principles set forth in this opinion. (*Bullock* v. *City and County of San Francisco, supra,* 221 Cal.App.3d at p. 1095.)

#### DISPOSITION

The order granting the preliminary injunction is affirmed, with such further proceedings to take place as are required to enter a final judgment consistent with the principles set forth in this opinion. Thomsen is awarded costs on appeal.

Nares, J., concurred.

**KREMER, P. J.**—I respectfully dissent.

Reading terms into Proposition K which are not there, the majority opinion upholds a preliminary injunction which restrains the City of Escondido (the City) from prohibiting a park owner's raising the rent for a

---

[7]Once a sale or transfer is completed, a new "tenant" takes up residence, and the rent control scheme applies accordingly, until the next sale or transfer (and change of tenant) takes place.

mobilehome park space when a coach changes hands. Because applying Proposition K precisely as written leads to just the opposite result, I would reverse the order granting a preliminary injunction.

The preliminary injunction is based on the theory the City was attempting to regulate activities assertedly not covered by the language of Proposition K. (*MacLeod* v. *City of Los Altos* (1960) 182 Cal.App.2d 364, 369 [6 Cal.Rptr. 326].) Although the standard of review for an order granting preliminary injunction is generally whether the trial court committed an abuse of discretion, the "likelihood of the plaintiff ultimately prevailing on the merits of the lawsuit occasionally 'depends upon a question of pure law rather than upon evidence to be introduced at a subsequent full trial. . . . If such a question of pure law is presented, it can sometimes be determinative over the other factor [(balancing the interim harm to the parties)], for example, when the defendant shows that the plaintiff's interpretation is wrong as a matter of law and thus the plaintiff has no possibility of success on the merits. . . .' [Citations.]" (*Carsten* v. *City of Del Mar* (1992) 8 Cal.App.4th 1642, 1649-1650 [11 Cal.Rptr.2d 252]; accord, *Pacific Landmark Hotel, Ltd.* v. *Marriott Hotels, Inc.* (1993) 19 Cal.App.4th 615, 624 [23 Cal.Rptr.2d 555].) Because the precise issue before the superior court involved interpretation of Proposition K's terms and does not turn "upon conflicting evidence to be presented in a later plenary trial," this court may review the matter de novo. (19 Cal.App.4th at p. 624.) Since Thomsen's proffered interpretation of Proposition K was wrong as a matter of law, I would conclude his chance of ultimate success on the merits of this lawsuit is nil and the injunction is thus improper. (*Ibid.*; *Carsten* v. *City of Del Mar*, *supra*, at pp. 1649-1650.)

In construing Proposition K, this court must ascertain the electorate's intent so as to effectuate the ordinance's purpose. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) In determining such intent, we must first examine the words of the ordinance. (*Ibid.*) Where, as here, the ordinance's relevant language is clear and unambiguous, its plain meaning governs. (*Ibid.*) Courts may not interpret away clear language in favor of a nonexistent ambiguity. (*Ibid.*; *In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) Further, in such circumstances, courts may not resort to extrinsic sources such as ballot pamphlets. (*People* v. *Coronado*, *supra*, at p. 151; *Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *In re Lance W.*, *supra*, at p. 886.) Instead, courts must presume the electorate meant what it said. (*People* v. *Coronado*, *supra*, at p. 151.) However, in concluding Proposition K does not regulate mobilehome park space rent increases sought by park owners from prospective buyers of coaches presently located in their parks, the majority opinion contravenes those well-accepted rules of statutory interpretation by going beyond the ordinance's

plain language and effectively inserting a "vacancy decontrol" provision omitted by the electorate. (Code Civ. Proc., § 1858.)

Proposition K does not contain "vacancy decontrol" language expressly permitting a mobilehome park owner to increase rent immediately upon sale or transfer of a coach from one homeowner to another. Nonetheless, without identifying any ambiguity in Proposition K, the majority opinion interprets the ordinance as containing an implied "vacancy decontrol" provision. (Code Civ. Proc., § 1858; *People v. Coronado, supra,* 12 Cal.4th at p. 151; *People v. Welch* (1971) 20 Cal.App.3d 997, 1002 [98 Cal.Rptr. 113].) Such interpretation is not based on analysis of the precise language of Proposition K regulating rents charged for mobilehome park spaces. Instead, after straying into discourse on various conceptual labels (including "vacancy control," "vacancy decontrol," "economic eviction," and "investment protection") not mentioned in Proposition K, the majority opinion simply concludes the ordinance must necessarily permit "vacancy decontrol" since it does not expressly or impliedly provide for "vacancy control." However, in light of Proposition K's plain language, proper analysis does not permit a finding the ordinance contains an implied "vacancy decontrol" provision.

On its face Proposition K regulates all rent increases. Except under limited statutory situations not at issue here (Civ. Code, § 798.17), the rent charged to prospective purchasers is not excluded from the ordinance's scope of regulation. In plain terms Proposition K regulates rent charged for spaces in mobilehome parks and provides that *any* increase in such rent must be approved by the City's mobilehome park rental review board. The ordinance includes clear proscriptive language fairly advising mobilehome park owners they "shall not demand, accept, or retain rent for a mobilehome space exceeding the rent" specified under various circumstances and shall not "send a notice containing the specific amount of a proposed rental increase" before receiving approval of a rent increase from the board. (Escondido Mun. Code, § 29-103.) Proposition K does not impose differing regulation depending on whether a coach has been sold or transferred or whether the "status" of a coach owner is existing or prospective. Instead, by regulating all space rent increases regardless of the coach owner's status or the sale of the coach, the ordinance has the effect of imposing "vacancy control" without expressly mentioning such term. Since the language of Proposition K is clear and unambiguous, the majority opinion's excursion "behind" the ordinance's express terms to scour the ballot arguments in search of a contrary intent is unnecessary and improper. (*In re Lance W., supra,* 37 Cal.3d at p. 886; accord, *People v. Coronado, supra,* 12 Cal.4th at p. 151; *Granberry v. Islay Investments, supra,* 9 Cal.4th at p. 744.)

However, in contrast to the majority's approach, applying the plain meaning of Proposition K's language regulating space rent would give full effect

to the terms of EMC section 29-103 and would not be inconsistent with Escondido Municipal Code section 29-101's definition of "tenant." (Code Civ. Proc., § 1858; *People* v. *Coronado, supra,* 12 Cal.4th at p. 151.) The ordinance refers to "tenant" primarily in the context of notice requirements (e.g., Escondido Mun. Code, §§ 29-104, subds. (c), (f), (i), 29-106) and nonpayment of illegal rents (Escondido Mun. Code, § 29-107). The ordinance mentions "proposed" tenants only with respect to notice of an intended change in the use of the park property. (Escondido Mun. Code, § 29-106, subd. (6)(b).)

Further, Proposition K's lack of a specific procedural mechanism for a park owner to obtain approval of a rent increase for a prospective coach purchaser does not compel an interpretation based upon consideration of matters beyond the ordinance's plain language. As discussed, Proposition K does not refer to prospective purchasers since its regulatory scheme is based on the mobilehome park space, not on the status of a coach owner or the transfer of a coach. When a coach located on a park space is sold or transferred, the existing regulated rent for that space continues in the interim until the prospective purchaser becomes a "tenant" and the park owner secures approval from the City for a rent increase. The majority opinion does not suggest any other interim mechanism is constitutionally compelled. Indeed, as acknowledged by Thomsen, any such specific interim procedure might unduly delay even the most routine coach sale.

Moreover, the majority opinion falls short in explaining how the implied "vacancy decontrol" provision it finds in Proposition K is to be implemented. Once vacated, rent for a space must be either "decontrolled" forever or re-controlled at some point. If "decontrolled" forever, the rent control scheme imposed under Proposition K would eventually wither over time, a result suggested nowhere in the ordinance's language. In effect, "permanent decontrol" would add the words "except in the event a coach is sold, in which case the ordinance no longer applies" to Proposition K's command in EMC section 29-103 that park owners "shall not demand, accept, or retain rent for a mobilehome space exceeding the rent" specified by the ordinance.

The majority avoids this result—but cannot avoid judicial amendment—by electing the opposite pole stating Proposition K imposes "vacancy decontrol/control," to wit, that after "decontrol" in the event of a sale, space rent is later controlled under the regulatory scheme. (Maj. opn., *ante,* at p. 897, fn. 7.) However, the majority opinion's proclamation that Proposition K contains an implied "vacancy decontrol/control" provision is devoid of analysis or textual reference. Instead—although not acknowledged by the majority opinion—to reach the majority's conclusion, an implicit amendment of the ordinance's language is necessary. If Proposition K establishes

"vacancy decontrol/control," Escondido Municipal Code section 29-103—which states the base rents upon which the board acts to approve increases—must be amended to provide generally that base rents are those charged in 1986 *and those negotiated in the event of a coach sale.* The point is not that "vacancy decontrol/control" is improper policy, only that implementing such policy requires reading new language into the ordinance. The only reading of Proposition K which avoids judicial amendment is that rents remain controlled in the event of a coach sale and may be increased only in accordance with the ordinance's provisions.

Finally, the majority opinion's reliance on *Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West* (1995) 35 Cal.App.4th 32 [41 Cal.Rptr.2d 393] is misplaced. That case involved the City's ordinance No. 91-19 whose stated purpose was to prevent a mobilehome park owner from forcing a prospective coach purchaser to sign a long-term lease exempting the space from rent control as a condition of the park owner's approving the sale. Concluding ordinance No. 91-19 impermissibly expanded Proposition K's definition of "tenant" to include purchasers or prospective coach purchasers and placed new requirements on park owners and tenants for entering into long-term leases exempt from rent control, we determined the ordinance was invalid as constituting an improper attempt to amend a voter-approved initiative and also as preempted by Civil Code section 798.17. (*Mobilepark West Homeowners Assn.* v. *Escondido Mobilepark West, supra,* at pp. 38, 41-43.) The issue in that case was the propriety of the City's attempt to prevent park owners from requiring existing and prospective owners of coaches to enter into long-term leases exempt from rent control. We were not presented with the issue now before us, to wit, whether Proposition K prohibits owners from raising the space rent charged to prospective purchasers absent compliance with the ordinance's regulatory mechanisms or entry into a long-term lease exempted from rent control by Civil Code section 798.17.

In sum, in construing Proposition K as not regulating mobilehome park space rent increases sought by park owners from prospective buyers of coaches presently located in their parks, the majority opinion has improperly inserted a "vacancy decontrol" provision into the ordinance. (*People* v. *Coronado, supra,* 12 Cal.4th at p. 151; *Granberry* v. *Islay Investments, supra,* 9 Cal.4th at p. 744; *In re Lance W., supra,* 37 Cal.3d at p. 886; Code Civ. Proc., § 1858.) Nothing in the language of Proposition K excludes from its regulatory scope the space rent charged to a prospective purchaser of a coach. The only exception is a long-term lease exempted from rent control by Civil Code section 798.17. On the other hand, interpreting Proposition K as regulating the rent for a mobilehome park space regardless whether a

coach located on the space is sold or transferred would give full meaning to the ordinance's plain language without adding new terms. Such conclusion would rest not upon finding an implied "vacancy control" provision but simply upon giving effect to the plain meaning of the ordinance's language tying rental amounts to spaces rather than to "tenants." Thus, since under the circumstances presented here the rental amounts charged to prospective purchasers of coaches located in Thomsen's mobilehome park are not excluded from Proposition K's scope of regulation, I would reverse the order granting his request for preliminary injunction.

A petition for a rehearing was denied October 16, 1996. Kremer, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied January 15, 1997. Baxter, J., did not participate therein. Mosk, J., and Werdegar, J., were of the opinion that the petition should be granted.