[No. D025959. Fourth Dist., Div. One. Mar. 23, 1998.]

SAN DIEGO UNIFIED PORT DISTRICT, Plaintiff and Respondent, v. JOHN GALLAGHER, Defendant and Appellant.

502

## COUNSEL

Morgan J. C. Scudi, Jeffrey D. Poindexter and Amy B. Vandeveld for Defendant and Appellant.

Best, Best & Krieger, C. Michael Cowett and Shawn D. Hagerty for Plaintiff and Respondent.

**OPINION**

**McINTYRE, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

San Diego Unified Port District (the District) was granted a summary judgment in its action for injunctive and declaratory relief against John Gallagher, for anchoring his two boats in Glorietta Bay in violation of San Diego Unified Port District Code section 4.30, 4.35 or 4.40. The court found Gallagher's walking disability, which rendered him unable to handle the wind, waves and wake at the District's designated long-term free anchorage, failed to create a triable issue under the federal Americans with Disabilities Act (hereafter ADA) (42 U.S.C. § 12101 et seq.), because the ADA does not apply to the regulation of recreational boating. The court further ruled that, even assuming the ADA applied to the District's regulation of mooring, Gallagher would nevertheless be required to move from Glorietta Bay, because seven other paying anchorages were available. Accordingly, the court entered judgment, allowing Gallagher's vessels to be towed. Gallagher appeals, contending the ADA applies. We agree and reverse, remanding for further proceedings in the trial court.

### DISCUSSION

■ On appeal from a summary judgment, we exercise an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court. (*Brundage* v. *Hahn* (1997) 57 Cal.App.4th 228, 235 [66 Cal.Rptr.2d 830]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) If the plaintiff is the moving party, it must meet its statutory burden of proof under subdivision (o)(1) of section 437c of the Code of Civil Procedure, by producing admissible evidence of ". . . each element of the cause of action entitling the party to judgment on that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (o)(1) - (2); *Zavala* v. *Arce* (1997) 58 Cal.App.4th 915, 926 [68 Cal.Rptr.2d 571].) If the District has failed to meet this burden, summary judgment is inappropriate.

■ To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined (here, declaratory relief); and (2) the grounds for equitable relief. (*City of South Pasadena* v. *Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293 [35 Cal.Rptr.2d 113].) ■ Here, the District has failed to establish its entitlement to equitable relief, by failing to show it is

likely to prevail on the merits of whether its anchoring policies violate the ADA, a consideration the District itself advanced as material in its separate statement of facts. (Code Civ. Proc., § 526; *Thomsen* v. *City of Escondido* (1996) 49 Cal.App.4th 884, 890 [56 Cal.Rptr.2d 902].)

I

APPLICABILITY OF THE ADA

Title II of the ADA provides that ". . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132.)

The District maintains that, for purposes of evaluating whether anchorage site allocation is within the purview of the ADA as "services, programs, or activities" of a public entity, this conduct is analogous to zoning. We agree. However, we reject the District's contention that zoning decisions are not subject to the ADA. Furthermore, the ADA contains a catchall phrase prohibiting *all discrimination* by a public entity, regardless of the context. (42 U.S.C. § 12132.)

First, the plain meaning of "activity" includes zoning, and there is nothing in the language of the ADA suggesting a governmental function must be expressly enumerated to fall within its scope. "Activity" is defined by Webster's Third New International Dictionary (1993) as a "natural or normal function or operation." Certainly, zoning is a normal function or operation of a governmental entity.

In addition, section 504 of the Rehabilitation Act of 1973, which also prohibits discrimination based on a disability by a public entity, defines "program or activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . ." (29 U.S.C. § 794(b)(1)(A).) Section 12133 of the ADA specifically provides that "[t]he remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights" applicable to discrimination claims under section 12132 of the ADA. (*Crowder* v. *Kitagawa* (9th Cir. 1996) 81 F.3d 1480, 1484.)

Moreover, as analyzed in detail both by the United States Court of Appeals for the Second Circuit and the federal district court for the Southern

District Court of New York, the legislative history and the Department of Justice's regulations and technical assistance manual confirm our interpretation of the plain language of the statute, that the ADA's antidiscrimination prohibition extends to all actions of state and local governments. (*Innovative Health Systems* v. *City of White Plains* (2d Cir. 1997) 117 F.3d 37, 45; *Innovative Health Systems, Inc.* v. *City of White Plains* (S.D.N.Y. 1996) 931 F.Supp. 222, 231; see also 28 C.F.R. § 35.130 (1997); *Pack* v. *Clayton County, Georgia* (N.D.Ga. 1993) 1993 WL 837007, affd. 47 F.3d 430 (11th Cir. 1995); *Oak Ridge Care Center* v. *Racine County, Wis.* (E.D.Wis. 1995) 896 F.Supp. 867, 872.)

*U.S.* v. *City of Charlotte, N.C.* (W.D.N.C. 1995) 904 F.Supp. 482, 484, applied a narrow construction of the term, to find the plain meaning did not encompass a zoning decision and therefore no analysis of legislative intent was required, but its holding was based primarily on cases where the courts themselves noted the issue was not adequately briefed. (See *Robinson* v. *City of Friendswood* (S.D.Tex. 1995) 890 F.Supp. 616, 620; *Kessler Inst. for Rehab.* v. *Essex Fells Mayor* (D.N.J. 1995) 876 F.Supp. 641, 655; *Oxford House, Inc.* v. *City of Albany* (N.D.N.Y. 1994) 155 F.R.D. 409, 410, tacitly overruled by *Innovative Health Systems* v. *City of White Plains, supra,* 117 F.3d at p. 44.)[1]

We respectfully disagree with these authorities as contrary to the plain language of the statute, and find the reasoning of the Second Circuit more persuasive. Therefore, we hold that an activity analogous to zoning, such as the District's allocation of sites for long-term free anchorages, is subject to the ADA.

II

FACTUAL FINDINGS TO BE MADE ON REMAND

Although the ADA applies to the District's allocation of anchorage sites, we make no finding that Gallagher can establish the elements of a title II ADA claim. (See e.g., *Does 1-5* v. *Chandler* (9th Cir. 1996) 83 F.3d 1150, 1152.) Specifically, it remains to be determined whether Gallagher is a "qualified individual with a disability" within the meaning of the ADA; and if so, what accommodation would be appropriate. Since we cannot make these determinations from the record before us, we remand the matter to the trial court, for further proceedings on this issue consistent with this opinion.

---

[1] We recognize the phrase "activity" was narrowly construed by Division Three of this district in *Buhl* v. *Hannigan* (1993) 16 Cal.App.4th 1612, 1623 [20 Cal.Rptr.2d 740]. In a different context, that case held that motorcycling was not an activity protected under the ADA merely because of the incidental adverse effect of motorcycle helmets on a hearing aid.

For purposes of this appeal, it appears the parties do not dispute that Gallagher is disabled within the meaning of 28 Code of Federal Regulations, section 35.104 (1997). However, the record is inadequate for us to determine whether Gallagher's disability leaves him qualified to perform the essential functions of sailing, including anchoring, in light of his inability to handle wind, waves and wake. Certainly at first blush, these appear to be essential features of sailing.

Section 12131 of 42 United States Code defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." (See also 28 C.F.R. § 35.104 (1997).)

There is scant authority interpreting "qualified individual with a disability" in the context of recreational activities. However, in actions alleging employment disability discrimination, the analogous concept of "qualified individual with a disability" requires a plaintiff to prove he or she is qualified to perform essential functions of a job. (42 U.S.C. § 12111(8); 42 U.S.C. § 12112(a); *Brundage* v. *Hahn, supra,* 57 Cal.App.4th at p. 236; *Miller* v. *Illinois Dept. of Corrections* (7th Cir. 1997) 107 F.3d 483, 484.) A similar requirement exists in the comparable area of Rehabilitation Act claims under 29 United States Code section 794(a). (*Marshall* v. *McMahon* (1993) 17 Cal.App.4th 1841, 1850 [22 Cal.Rptr.2d 220].)

On the other hand, we recognize the determination of what may constitute "qualified individual with a disability" is a fact-intensive question. In *Concerned Parents* v. *City of West Palm Beach* (S.D.Fla. 1994) 846 F.Supp. 986, 990, the court points out ". . . the ADA was enacted precisely to remedy the discriminatory effects of overgeneralizations, presumptions, and prejudices about what persons with disabilities can and cannot do." (*Ibid.* at fn. 10.) As an example, the court describes a wheelchair soccer team as evidence children who cannot run or kick a ball can still enjoy the activity. (*Id.* at p. 990.)

Furthermore, 28 Code of Federal Regulations section 35.130(b)(7) (1997)[2] recognizes that a public entity is not required to make any modifications that would "fundamentally alter the nature of the service, program, or activity."

---

[2]28 Code of Federal Regulations section 35.130(b)(7) (1997) provides in pertinent part:

"A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

The test to determine the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program. (*School Bd. of Nassau County* v. *Arline* (1987) 480 U.S. 273, 287, fn. 17 [107 S.Ct. 1123, 1130-1131, 94 L.Ed.2d 307], superseded by statute on other grounds as stated in *Shiring* v. *Runyon* (3d Cir. 1996) 90 F.3d 827, 831, and *Mengine* v. *Runyon* (3d Cir. 1997) 114 F.3d 415, 419; *Easley by Easley* v. *Snider* (3d Cir. 1994) 36 F.3d 297, 305.)

As such, we fully concur with the trial court's order that the ADA's requirement of accommodation does not permit Gallagher to anchor in whatever part of Glorietta Bay he may unilaterally select. On the other hand, we do not preclude the possibility that the trial court's findings concerning the nature and extent of Gallagher's disability and the options for accommodation may lead to the designation of an alternate anchorage site.

### DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

Kremer, P. J., and Work, J., concurred.