UNITED STATES of America, Plaintiff,

and

Taylor Home of Charlotte, Inc., Intervenor–Plaintiff,

v.

CITY OF CHARLOTTE, NORTH CAROLINA, Defendant.

No. 3:94CV–394–MU.

United States District Court, W.D. North Carolina, Charlotte Division.

Nov. 2, 1995.

Harvey L. Handley, Sharon Bradford Franklin, U.S. Department of Justice, Washington, DC, for United States.

Louis L. Lesesne, Jr., Lesesne & Connette, Charlotte, NC, Leto Copeley, Fontana, Copeley & Lanier, P.A., Durham, NC, for Taylor Home of Charlotte, Inc.

Terrie V. Hagler, Bentford E. Martin, Blair, Conaway, Bograd & Martin, Charlotte, NC, for W. Troy Watson, Mae L. Watson, Pauline S. Newman.

Susan E. Rowell, Meredith W. Holler, Moore & Van Allen, Charlotte, NC, DeWitt F. McCarley, David M. Smith, Office of the City Attorney, Charlotte, NC, Henry W. Underhill, Charlotte, NC, Daniel G. Clodfelter, Moore and Van Allen, Charlotte, NC, for City of Charlotte, N.C.

### ORDER

MULLEN, District Judge.

**This Matter** is before the court upon the Defendant's motion to dismiss, filed February 22, 1995.

### FACTUAL AND PROCEDURAL HISTORY

On November 23, 1994, the United States filed suit against the City of Charlotte ("Charlotte"), alleging in three different claims that Charlotte has violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The United States' second claim relates to the treatment of an application by Taylor Home ("Taylor") to construct a facility for AIDS patients at 5026 Lansing Drive in Charlotte.

After the original complaint was filed, Taylor moved to intervene, and Magistrate Judge Brent McKnight issued an order allowing intervention on December 28, 1994.

Taylor's complaint in intervention contains four claims—one under the Fair Housing Act, one under 42 U.S.C. § 1983 to enforce rights claimed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, one under the Americans with Disabilities Act ("ADA"), and one under Section 504 of the Rehabilitation Act of 1973.

Charlotte now moves for dismissal of Taylor's claims under the ADA and Rehabilitation Act. Charlotte contends that these claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## ANALYSIS

### I. Taylor's ADA Claim

Charlotte contends that Taylor's ADA claim should be dismissed because: (1) Taylor has failed to state a claim upon which relief can be granted and (2) Taylor lacks standing to maintain an ADA claim.

#### A. Failure to state a claim

Charlotte argues that Taylor's ADA claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Charlotte claims that the ADA is inapplicable to zoning activities and decisions.

■ In determining a motion to dismiss under Rule 12(b)(6), the court must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). The plaintiff is entitled to proceed unless the district court is certain beyond a doubt that the plaintiff cannot prove a set of facts in support of his claim. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1993).

To determine whether Title II of the ADA applies to zoning decisions and activities, the court must look to Section 12132. This section provides as follows:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. This section has two distinct prohibitions. First, the statute forbids a public entity from excluding a "qualified individual" from participating in, or denying the benefits of, the public entity's "services, programs, or activities." Second, the statute prohibits a public entity from subjecting a qualified individual to discrimination.

In the case at bar, Taylor's complaint alleges that "[b]y refusing to permit plaintiff-intervenor to build its group home in a single family residential neighborhood, defendant has discriminated against Taylor Home and its proposed residents, in violation of 42 U.S.C. § 12132, *by excluding them from participation in and denying them the benefits of services, programs or activities of the defendant*, in violation of § 202 of the ADA, 42 U.S.C. § 12132." (emphasis added) Hence, Taylor alleges that Charlotte has violated the first prohibition of section 12132. Taylor has not implicated the second prohibition.

■ Notwithstanding Taylor's allegations, a zoning decision does not constitute a service, program, or activity of a municipality. *See Burnham v. City of Rohnert Park*, 1992 WL 672965, *1 (N.D.Ca.1992); *Oxford House Inc. v. City of Albany*, 155 F.R.D. 409, 410 (N.D.N.Y.1994); *Moyer v. Lower Oxford Township*, 1 A.D.D. 450, 1993 WL 5489, *2 (E.D.Pa.1993); *Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of the Borough of Essex Fells*, 876 F.Supp. 641, 655 (D.N.J.1995). Although ample case law supports this conclusion, the court really only needs to look at the definitions of the words "service," "program" and "activity" in Webster's Dictionary. Interpreting these words to encompass zoning decisions would stretch their meanings beyond sensible proportion.

■ Nevertheless, the United States and Taylor argue that legislative history and the Justice Department's regulations establish that zoning activities and decisions are

among the services, programs, or activities conducted by public entities. The plaintiffs, however, have forgotten an important rule of statutory interpretation—that is, where the statutory language is unambiguous, the court's inquiry "terminates." *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 954, 130 L.Ed.2d 897 (1995) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–31, 103 L.Ed.2d 290 (1989)). The court is not permitted to engage in the interpretation of a "facially clear" statute; the court's sole duty is to apply the statute. *Id.* Here, the statutory language is plain and unambiguous. Consequently, the court lacks authority to examine secondary indices of intent. Since Charlotte's zoning decisions do not constitute "services, programs, or activities," Taylor's ADA claim is dismissed.

Having dismissed Taylor's ADA claim pursuant to Rule 12(b)(6), the court has no need to address the issue of standing.

## II. Taylor's Rehabilitation Act Claim

Charlotte argues that Taylor's Rehabilitation Act claim should be dismissed because: (1) Taylor lacks standing to maintain such a claim and (2) Taylor's complaint fails to allege the conduct about which Taylor complains is related to a program or activity of Charlotte which receives or dispenses federal funds.

### A. Standing

Charlotte contends that Taylor lacks standing to maintain its claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("the Act"), because its interests are not within the "zone of interests" sought to be protected by the Act. Section 505 of the Act provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available

to *any person aggrieved* by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794(a)(2) (emphasis added).

In *Nodleman v. Aero Mexico*, 528 F.Supp. 475 (C.D.Calif.1981), the district court conducted a comprehensive review of whether a non-handicapped person had standing to bring an action under Section 504 of the Act. Noting the strong similarity in "language, design, and purpose" in the Rehabilitation Act and other civil rights statutes, the court stated that the use of the language "any person aggrieved" in Section 505(a)(2) "evinces a Congressional intention to define standing to bring a private action under Section 504 as broadly as is permitted by Article III of the Constitution."[1] *Id.* at 485. Consequently, the court concluded that the non-handicapped individual could sue if "plaintiff alleges the loss of important associational benefits resulting from the exclusion of discriminaties." *Id.* at 486 (citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210–11, 93 S.Ct. 364, 367–68, 34 L.Ed.2d 415).

Article III of the United States Constitution requires that the plaintiff "have a personal stake in the outcome of the controversy to insure concrete adversariness...." *Duke Power Co. v. Carolina Envtl. Study Group Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978). Further, the plaintiff must have suffered "a distinct and palpable injury to himself," *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), that is likely to be redressed if the requested relief is granted. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

In *Independent Housing Servs. v. Fillmore Ctr. Assocs.*, 840 F.Supp. 1328 (N.D.Cal.1993), the plaintiffs filed suit against the City Redevelopment Agency and

---

1. The court relied heavily on *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210–11, 93 S.Ct. 364, 367–68, 34 L.Ed.2d 415 (1972). The court in *Trafficante* determined that the language "persons aggrieved" under Section 810(c) of the Civil Rights Act of 1968, 42 U.S.C. § 3610(a), showed a congressional intent to define standing as broadly as permitted by Article III of the

United States Constitution. *Id.* at 209, 93 S.Ct. at 366. *Trafficante* relied on *Hackett v. McGuire Bros., Inc.*, 445 F.2d 442, 446 (1971), which concluded that the words "by a person claiming to be aggrieved" in the Civil Rights Act of 1964, 42 U.S.C. § 2000e—5(a), showed a congressional intent to define standing as broadly as permitted by Article III.

owners of a housing project alleging, *inter alia*, violations of the Rehabilitation Act. Consistent with both Article III and *Nodleman*, the court held that the Independent Housing Service had standing based on its allegation that it was injured because it had to spend more money in seeking accessible housing elsewhere due to Fillmore Center's inaccessibility.[2]

Similarly, in *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir.1987), the plaintiff GLAD, a group organized for the benefit of hearing-impaired persons, paid for a sign language interpreter for a deaf juror and was denied reimbursement by the county. When GLAD filed suit under the Act, the defendants argued that GLAD lacked standing; they claimed that GLAD was not a member of the class that Section 504 was designed to benefit. *Id.* at 1115. The court, noting that it had already held that an organization of or for handicapped persons has standing to sue for injunctive relief under Section 504 (*See Williams v. United States*, 704 F.2d 1162 (9th Cir.1983)), found no reason why the organization could not maintain a damages action under Section 504. *Id.*

■ Based on the aforementioned case law, it appears to the court that the language "any person aggrieved" is not limited to individuals with a disability. Rather, an organization of or for disabled individuals may file suit under the Rehabilitation Act if: (1) the group has been discriminated against be- cause of its association with the disabled; and (2) the group has suffered a "distinct and palpable injury" due to the discrimination— that is, Article III's standing requirements are satisfied.[3]

■ In the case at bar, Taylor alleges that Charlotte has violated the Act by refusing to permit Taylor to construct housing for persons with AIDS because of their particular disability. Taylor alleges that Charlotte's discrimination has placed Taylor in jeopardy of losing HUD funds, and has caused Taylor to incur additional construction costs and expenses. Taylor seeks monetary relief, as well as a court order enjoining Charlotte to issue Taylor a building permit for the group home facility. Taylor's allegations are sufficient to permit Taylor to maintain this suit under the Act. Taylor has clearly alleged that it has been discriminated against because of its potential tenants' disability. Further, like the plaintiffs in *Fillmore* and *Zolin*, Taylor alleges that it has suffered a "distinct and palpable injury." If Taylor were to prevail in this action, the requested relief of monetary damages and an injunction would be sufficient to "redress" its injuries. Consequently, the court finds that Taylor has standing to maintain this action under the Rehabilitation Act.

### B. Failure to state a claim

Finally, Charlotte claims that Taylor's Rehabilitation Act claim should be dismissed

---

2. The court found that IHS was also injured because it must refer its clients to partially inaccessible housing at Fillmore Center.

3. In support of its argument that Taylor lacks standing, Charlotte cites *Nelson v. Tuscarora Intermediate Unit No. 11*, 500 Pa. 458, 457 A.2d 1260, *cert. denied*, 464 U.S. 866, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983) and *Andrew H. by Irene H. v. Ambach*, 600 F.Supp. 1271, 1280 (N.D.N.Y. 1984). In *Nelson*, the court found, in the context of public education, that the Act was not a *defense* to an action by a school district to collect the cost of education for a child with a disability from a provider of residential services to the child. *Id.* However, this holding was based on 45 C.F.R. § 84.33(c)(1), a regulation by the Department of Health Education and Welfare, which provided that the Act would not "relieve an insurer or similar third party from an otherwise valid obligation to provide or pay for ser- vices provided to a handicapped person." Consequently, this case is inapposite.

*Ambach* arose out of a challenge to the New York State rate setting procedure for tuition reimbursement of private schools providing services to handicapped children. 600 F.Supp. at 1273. In addressing the issue of standing, the court, without any analysis, flatly stated that "[n]othing in the ... Rehabilitation Act grants to such organizations a private right of action." *Id.* at 1280. "Rather, ... the Rehabilitation Act imparts rights, potentially litigable in federal court, to the children the provisions attempt to assist." *Id.* However, *Ambach* is somewhat unclear, as the court seemed to indicate that the plaintiff-organizations would have had standing if they had alleged pecuniary loss to themselves. *Id.* at 1279. To the extent *Ambach* holds that only disabled individuals may sue under the Act, it is contrary to the greater weight of authorities, and therefore unpersuasive to the court.

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Charlotte asserts that Taylor has failed to allege "that the conduct about which it complains is related in any way to a program or activity of Charlotte which receives or dispenses federal funds."

■ Section 504 of the Act prohibits discrimination on the basis of disability in any "program or activity" of recipients of Federal financial assistance. 29 U.S.C. § 794. Case law has established that a claim under Section 504 will be stated only where the allegedly discriminatory "program or activity" was conducted by an entity which received or dispersed federal funding. *See e.g. Huber v. Howard County*, 849 F.Supp. 407 (D.Md. 1994); *Bentley v. Cleveland County Bd. of Comm'rs.*, 41 F.3d 600 (10th Cir.1994); *Bonner v. Arizona Dept. of Corrections*, 714 F.Supp. 420, 422 (D.Az.1989), *rev'd. in part, Bonner v. Lewis*, 857 F.2d 559 (9th Cir.1988). There must be a sufficient nexus between the federal funds and the discriminatory practice. *Bentley*, 41 F.3d at 603.

■ Here, Taylor alleges in its complaint that Charlotte's "refusal to permit Taylor Home to construct housing for the disabled denies Taylor Home and those to whom it seeks to provide housing the benefits of federal assistance...." Taylor further alleges "[u]pon information and belief, the defendant is a program or activity receiving federal financial assistance, as defined by § 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794, including federal funds for the provision of housing." Although Taylor's allegations are somewhat vague, construing them in the light most favorable to Taylor, the court believes that Taylor has stated a claim under the Rehabilitation Act. Of course, after discovery is completed, Charlotte is free to file a motion for summary judgment on Taylor's Rehabilitation Act claim if Charlotte reasonably believes that Taylor cannot establish a sufficient nexus between the federal funds and the alleged "program or activity."

**IT IS THEREFORE ORDERED** that Charlotte's motion to dismiss is **PARTIALLY GRANTED.** Taylor Home's ADA claim (its "Second Claim for Relief") is hereby **DISMISSED.**