Filed 3/16/15  White v. Maksimow CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALAN W. WHITE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LORENZA MAKSIMOW,<br><br>    Defendant and Appellant. | D065323<br><br><br>(Super. Ct. No. 37-2013-58576-CU-FR-NC) |


APPEAL from an order of the Superior Court of San Diego County,

Earl H. Maas III, Judge.  Reversed with directions.


Law Offices of David C. Beavans and David C. Beavans for Defendant and

Appellant.

William J. Brown III for Plaintiff and Respondent.

Lorenza Maksimow appeals from the trial court's order denying her special motion to strike under the anti-SLAPP statute (Code of Civ. Proc., § 425.16)[1] in a lawsuit brought against her by Alan W. White.  As we will explain, we conclude that the trial court erred in denying the special motion to strike, and we therefore reverse and remand with directions.

I

FACTUAL AND PROCEDURAL BACKGROUND

White is a licensed public insurance adjuster, who does business as the sole proprietor of Alan White & Associates (AWA).  In 2010, White hired Maksimow to work for him as an interim public insurance adjuster while she attempted to become fully licensed.  White provided Maksimow with leads to obtain clients for AWA and paid her a percentage of the fees paid by the clients to AWA.

Maksimow worked for White until December 2011, when she was terminated. Maksimow believed that White did not pay her all the money she was owed, and she had her attorney send a letter to White in July 2012 detailing the amounts purportedly owed. White responded in August 2012 with an accounting that disputed Maksimow's claims.

Still contending that White owed her money, Maksimow filed a complaint with the California Labor Commissioner, Department of Industrial Relations, Division of

---

[1]     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.  SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1 (*Briggs*).)

Labor Standards Enforcement (DLSE) in November 2012.[2]  The complaint, which was signed by Maksimow, identified "Alan White & Associates, Inc," (hereinafter, "AWA, Inc.") as the defendant rather than White's sole proprietorship AWA.  AWA, Inc. was incorporated in 1993 but has been defunct for at least 10 years and was never used by White to conduct business as a public insurance adjuster.  White was listed as the agent for service of process for AWA, Inc., but since the corporation had been defunct for several years, the latest address given for the corporate agent for service of process was White's address in Encinitas, where White has not resided since 2000 and where he no longer receives mail.  It is undisputed that Maksimow worked for AWA, not for AWA, Inc.

The complaint and all other notices for the DLSE proceedings were served on the out-of-date Encinitas address associated with AWA, Inc., and White accordingly never received notice of the DLSE proceedings.  Documents that the DLSE served on AWA, Inc.'s address in Encinitas were returned as undeliverable.

Evidence in the record shows that Maksimow knew that the Encinitas address was not where White did business, as she worked for him out of his Cardiff-by-the-Sea office in 2010 and 2011, and she and her attorney corresponded with White more recently in Escondido, where he had moved his office in June 2012.  A factual dispute exists as to why AWA, Inc. was named as the defendant in the DLSE proceeding and why service of

---

[2]    The DLSE's decision states that Maksimow filed an initial report or claim with the Labor Commissioner on June 19, 2012.  That claim does not appear in the record before us.

3

process was addressed to an out-of-date address for White in Encinitas. Maksimow's declaration states, "The DLSE handled serving Alan White and Associates — I had nothing to do with that. They also chose to file the case against 'Alan White & Associates, Inc.[,]' rather than the proper 'Alan White & Associates' a non-corporate entity. I do not know why they chose to do that, but it may have been a mistake on DLSE's part." Maksimow further stated, "Everything I submitted to the DLSE was true, or true according to the best of my knowledge."[3] White's declaration, in contrast, maintains that Maksimow "deliberately mislead the [DLSE] that she worked for the corporation as an employee, and supplied the years out-of-date [Encinitas] address."[4]

After attempting service on the corporate agent of AWA, Inc. at the Encinitas address, the DLSE held a hearing on Maksimow's complaint. White did not appear at the hearing.[5] The DLSE issued a decision in favor of Maksimow on January 16, 2013,

---

[3]   Also relevant to whether Maksimow intended to proceed against AWA, Inc. is a letter Maksimow wrote to the DLSE after the superior court judgment was entered, in which she questions why the defendant identified in the judgment was AWA, Inc. rather than AWA, as she worked for AWA, not AWA, Inc. In the letter, Maksimow also acknowledges that she will have difficulty executing on the judgment because it is against AWA, Inc. rather than AWA, and she asks for the DLSE's assistance in amending the judgment to name AWA rather than AWA, Inc.

[4]   We note that Maksimow filed evidentiary objections to the evidence submitted by White in support of his anti-SLAPP motion. The trial court did not rule on the objections. In the context of an anti-SLAPP motion, "[w]hen the trial court does not rule on an evidentiary objection, we deem the objection to have been overruled." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1480, fn. 7 (*Zucchet*).)

[5]   The DLSE decision notes, "The Defendant's agent was served at the address of record listed with the California Secretary of State but the Defendant failed to appear at the hearing and did not file an answer to the complaint."

4

concluding that Maksimow was entitled to recover a total of $70,008.66 from AWA, Inc., including interest and penalties.

Thereafter, DLSE filed a request for entry of judgment in the San Diego Superior Court in favor of Maksimow. Consistent with the prior proceedings before the DLSE, the complaint identified AWA, Inc. as the defendant. The clerk of the court issued a notice of entry of judgment on March 4, 2013, for a total judgment amount of $71,046.98 (inclusive of post-hearing interest and a court filing fee), and it served the notice of entry of judgment on AWA, Inc. at the out-of-date Encinitas address.

Maksimow obtained a writ of execution from the superior court on July 3, 2013, in the amount of the judgment plus interest.[6] On the writ of execution, the judgment debtor is identified as AWA, Inc., with the address of AWA's former Cardiff-by-the-Sea office.

On July 17, 2013, White was notified by his bank, U.S. Bancorp, that the writ of execution had been served on it in an attempt to levy against AWA's account. White explains that he contacted DLSE and found out that the decision giving rise to the writ of execution was against AWA, Inc., not against him or his sole proprietorship, and he informed U.S. Bancorp of that fact. According to White, U.S. Bancorp stated that it nevertheless planned to release the funds in AWA's bank account to the sheriff.

White filed this lawsuit on July 22, 2013, against Maksimow and U.S. Bancorp. The complaint alleges causes of action for (1) extrinsic fraud (against Maksimow), based

---

[6]    The writ of execution appearing in the appellate record is poorly photocopied and the amount set forth therein is not legible. According to both White's declaration and complaint, the writ of execution was in the sum of $73,045.96.

5

on which White sought to vacate the judgment that Maksimow obtained against AWA, Inc.; (2) an injunction (against both defendants) enjoining U.S. Bancorp from releasing the funds to the sheriff and Maksimow from attempting to enforce her judgment;[7] (3) abuse of process (against Maksimow); (4) fraud (against Maksimow); and (5) declaratory relief (against U.S. Bancorp). White alleges that Maksimow committed fraud and abuse of process by deliberately misrepresenting to the DLSE and to the superior court that she worked for AWA, Inc. rather than AWA as a sole proprietorship, and by supplying an out-of-date address for service of process on White, which led to a fraudulently procured judgment and an improper levy on AWA's bank account.

Shortly after the lawsuit was filed, the trial court directed that the parties appear before Judge Lisa Schall, who had issued the writ of execution. Judge Schall vacated the writ of execution on July 29, 2013, after determining that White had not been properly served with notice of entry of judgment, even though Maksimow knew White's correct address.

---

[7] "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.) "To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined . . . ; and (2) the grounds for equitable relief." ( *San Diego Unified Port Dist. v. Gallagher* (1998) 62 Cal.App.4th 501, 503.) The language of the operative complaint makes clear that the cause of action for "injunction" against Maksimow is based on the same ground as the cause of action for extrinsic fraud. Specifically, White alleges that Maksimow should be enjoined from seeking to enforce a judgment obtained through extrinsic fraud. For the purposes of our analysis we will therefore treat the "injunction" cause of action against Maksimow as identical to the claim for extrinsic fraud, and our discussion of the extrinsic fraud cause of action is intended to cover the cause of action for "injunction" as well.

Maksimow then filed a special motion to strike under the anti-SLAPP law in this action on August 26, 2013, and White opposed it. The trial court (Judge Earl H. Maas III) denied the special motion to strike. It explained that Maksimow had met her burden under the first prong of the anti-SLAPP analysis because she established that White's claims against her arose from acts in furtherance of first amendment or petitioning activity protected by the anti-SLAPP statute, but that the special motion to strike failed on the second prong because White had met his burden to show a probability of success on his claims. Maksimow appeals from the denial of the special motion to strike.

II

DISCUSSION

A.  *Legal Standards Governing Anti-SLAPP Motions*

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has

7

demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute — i.e., that arises from protected speech or petitioning *and* lacks even minimal merit — is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).) " 'If the defendant does not demonstrate [the] initial prong, the court should deny the anti-SLAPP motion and need not address the second step.' " (*Zucchet*, *supra*, 229 Cal.App.4th at p. 1476.)

Section 425.16, subdivision (e) describes the type of activity protected by the anti-SLAPP statute. An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)[8]

---

8       When the first two subparts of section 425.16, subdivision (e) are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an official body), the moving party is not required to independently demonstrate that the

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

B.    *White's Claims Arise from Protected Activity*

The first issue in the anti-SLAPP analysis is whether, as the trial court determined, White's claims arise from protected activity.

As we have explained, one form of protected activity under the anti-SLAPP statute is "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).) As Maksimow points out, and White does not contest, all of the claims in White's complaint are based on the proceedings that Maksimow instituted before the DLSE and the superior court. Specifically, White's claims are based on Maksimow's purportedly misleading statements in the DLSE proceeding and in the superior court about her employment by AWA, Inc. and about White's current address.

Statements made in a proceeding before the DLSE fall under the anti-SLAPP statute as petitioning activity because a DLSE proceeding is the proceeding of a

---

matter is a " 'public issue' " within the statute's meaning. (*Briggs*, *supra*, 19 Cal.4th at p. 1113.)

9

governmental administrative body (*Briggs*, *supra*, 19 Cal.4th at p. 1115 [" ' "[t]he constitutional right to petition . . . includes . . . seeking administrative action" ' "]), and statements made during a superior court proceeding also fall under the anti-SLAPP statute because a superior court case is a judicial proceeding. (*Ibid*. [participating in litigation in court is protected petitioning activity].)

Although not taking issue with the proposition that Maksimow's participation in the DLSE and superior court proceedings were in furtherance of Maksimow's right to petition as described in the anti-SLAPP statute, White contends that Maksimow's participation in those proceedings are not protected by the anti-SLAPP statute because they were not a *valid* exercise of Maksimow's constitutional rights in that they were *illegal*. Specifically, White contends that by pursuing a wage claim and a writ of execution against AWA, Inc. when she knew the proceedings were brought against the wrong entity, Maksimow engaged in illegal fraudulent activity.

In enacting the anti-SLAPP statute, the Legislature stated that its purpose was to address "lawsuits brought primarily to chill the *valid* exercise of the constitutional rights of freedom of speech and petition." (§ 425.16, subd. (a), italics added.) Our Supreme Court has accordingly held that when it is uncontested or otherwise conclusively established that a person acted *illegally* in exercising his or her First Amendment rights, that activity is not a *valid* exercise of rights, and is accordingly not protected under the anti-SLAPP statute. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) Specifically, *Flatley* held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in

10

furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant *concedes***,** or the evidence *conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley*, at p. 320, italics added.) "The rationale is that the defendant cannot make a threshold showing that the illegal conduct falls within the purview of the statute and promotes section 425.16's purpose to 'prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the *valid* exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)' " (*Id.* at p. 316, italics added.)

Our Supreme Court has emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases of illegality. "If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, *supra*, 39 Cal.4th at p. 316.) "[T]he showing required to establish conduct illegal as a matter of law — either through defendant's concession or by uncontroverted and conclusive evidence — is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Id.* at p. 320, italics added.) Applying *Flatley*, subsequent courts have reiterated that it is only in "*rare cases* in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386, italics added (*Cross*); see also *Zucchet*, *supra*, 229 Cal.App.4th at p. 1480 ["this is not the rare

11

case in which the illegality of [the] activities is uncontested or conclusively established"].)

"The rare cases in which the exception for illegal conduct has been applied include (1) a case in which the plaintiff obtained a finding of factual innocence, which conclusively established that the defendant made a false police report, and the defendant did not contest that fact (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703); and (2) a case in which the defendant conceded that its acts of vandalism in support of animal rights issues were unlawful (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296).  In contrast, courts deny anti-SLAPP motions when it is not conclusively established or conceded that unlawful protected activity occurred.  (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 712 [defendant did not concede that she engaged in any unlawful activities and there was no uncontroverted evidence that she did so]; *Cross*, *supra*, 197 Cal.App.4th at p. 386 [defendant did not concede criminal conduct and the uncontroverted evidence did not establish a crime as a matter of law].)"  (*Zucchet*, *supra*, 229 Cal.App.4th at pp. 1478-1479.)

It is not the defendant's burden to disprove the truth of the allegations of any illegal conduct appearing in the complaint.  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 740 [A defendant in a malicious prosecution action alleging abusive activity is not required to first establish that his actions are constitutionally protected as a matter of law, as " '[i]f this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.' "]; *DuPont Merck*

12

*Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 566 [the truth of the plaintiff's allegations that the defendant made false statements should be considered during the second prong analysis in an anti-SLAPP motion, and to do otherwise would be "*placing the cart before the horse*"].)

In this case, the illegality of Maksimow's conduct is neither uncontroverted nor conclusively established as a matter of law. Maksimow argued in the trial court and continues to argue on appeal that she did not commit misconduct. Accordingly, Maksimow plainly has not *conceded* the illegality of her conduct. Further, the evidence also does not *conclusively establish* that Maksimow acted illegally. Maksimow contends that the DLSE was the entity that made the mistake of identifying AWA, Inc. as the defendant and serving documents at AWA, Inc.'s corporate address in Encinitas. Further, Maksimow's attorney argued in the trial court that there is no proof that Maksimow did anything wrong in attempting to levy on a writ of execution with White's bank, even though she knew that her judgment was against AWA, Inc. rather than AWA, as she could merely have been attempting to find out if AWA, Inc. — the entity against whom she had obtained a judgment — had any active accounts at the bank. Indeed, the trial court's comments during the argument on Maksimow's demurrer emphasize that the crucial facts were very much in dispute as to whether Maksimow committed intentional misconduct in attempting to execute against White's bank account. As the trial court stated, "[Y]ou're getting into saying it's the bank's fault that they went after it; not her fault. I don't know that. That's an issue that needs to be discovered and worked out. . . . [I]t does lead me to believe there's at least the possibility that she knew exactly what she

13

was doing when she went after Mr. White's holdings as opposed to going after the corporation that she had, in fact, sued.  Could be the bank's fault.  I give you that.  I don't know that.  . . . I'm not in a position where I can judge whether she knew what she was doing or not."  Those comments underscore that it has not been conclusively established that Maksimow engaged in any illegal conduct.

In sum, because White's claims arise from Maksimow's petitioning activity, and this is not the rare case in which the illegality of those activities is uncontested or conclusively established, Maksimow has satisfied her burden on the first prong of the anti-SLAPP analysis to show that White's claims arise from activity protected by the anti-SLAPP statute.

C.      *White's Probability of Prevailing on His Claims*

Having determined that Maksimow satisfied her burden under the first prong of the anti-SLAPP analysis, we next consider whether White has met his burden under the second prong.

"To satisfy the second prong, 'a plaintiff responding to an anti-SLAPP motion must " 'state[] and substantiate[] a legally sufficient claim.' "  [Citation.]  Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' "  (*Oasis West*, *supra*, 51 Cal.4th at p. 820.)  In short, a plaintiff must " 'demonstrate[] a probability of prevailing on the claim.' "  (*Ibid*.)  If a plaintiff meets this burden, the action is allowed to go forward despite the fact that it arises from protected activity.  (*Ibid*.)

14

1.	*The Litigation Privilege Bars the Causes of Action for Fraud and Abuse of Process*

We first consider Maksimow's contention that White cannot demonstrate a probability of prevailing because all of his causes of action against her are barred by the litigation privilege set forth in Civil Code section 47, subdivision (b). As we will explain, we agree that the litigation privilege applies to White's causes of action for abuse of process and fraud.

The litigation privilege " 'is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing." ' " (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 963.) Civil Code section 47, subdivision (b) states in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ." As our Supreme Court has explained, "The litigation privilege . . . provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' . . . 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*Action Apartment Assn., Inc. v.*

15

*City of Santa Monica* (2007) 41 Cal.4th 1232, 1241, citations omitted (*Action Apartment*).)

" 'The principal purpose of [Civil Code] section [47, subdivision (b)] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Flatley*, *supra*, 39 Cal.4th at p. 321.) "[T]he privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' [Citation.] The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' " (*Id*., at p. 322.) Specifically, "the litigation privilege has since 'been held to immunize defendants from tort liability based on theories of abuse of process [citations], intentional infliction of emotional distress [citations], intentional inducement of breach of contract [citations], intentional interference with prospective economic advantage [citation], negligent misrepresentation [citation], invasion of privacy [citation], negligence [citation] and fraud [citations].' " (*Action Apartment*, *supra*, 41 Cal.4th at p. 1242.)

Here, as we have explained, each of White's causes of action against Maksimow is based on the allegation that Maksimow made deliberately misleading statements during the DLSE proceedings and the superior court proceedings for the purpose of obtaining a judgment against White and thereafter levying upon on a writ of execution. Specifically, White alleges that Maksimow deliberately made misstatements to the DLSE and the superior court by indicating that she worked for AWA, Inc. and by supplying an out-of-date address for service of process on White, which enabled her to obtain a judgment and wrongfully pursue the writ of execution. All of these statements are made "in furtherance

16

of the objects of the litigation" as required for the litigation privilege to apply. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 219.)

Both the DLSE proceedings and the superior court action are the type of proceedings to which the litigation privilege applies. The statements that Maksimow made during the DLSE proceeding are covered by the litigation privilege as statements made as part of an "official proceeding authorized by law" within the meaning of Civil Code section 47, subdivision (b) because they were made in a quasi-judicial proceeding. (See *Lebbos v. State Bar* (1985) 165 Cal.App.3d 656, 667 [statements made in initiating and pursuing a State Bar administrative proceeding were protected by the litigation privilege]; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 362 ["statements that are made in quasi-judicial proceedings . . . are privileged to the same extent as statements made in the course of a judicial proceeding" and "many cases have held that the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing"].) Superior court proceedings are clearly covered as a "judicial proceeding." (Civ. Code, § 47, subd. (b).) Moreover, to the extent that White's claims are more specifically based on the allegedly fraudulent statements that Maksimow made in the superior court to obtain a judgment and a writ of execution, our Supreme Court has established that even the act of carrying out a writ of execution is within the protection of the litigation privilege when — as here — it is alleged that the judgment and writ of execution were fraudulently obtained and the gravamen of the action is fraudulent communicative conduct in obtaining the writ of execution. (*Rusheen v. Cohen* (2006) 37

17

Cal.4th 1048, 1065 (*Rusheen*) [discussing application of litigation privilege to act of carrying out a writ of execution].)

White argues that his claims against Maksimow are not subject to the litigation privilege because they are based on noncommunicative conduct rather than communicative acts by Maksimow. The argument lacks merit. The litigation privilege applies to "publications and communications" constituting "communicative" acts, and the " '[p]leadings and process in a case are generally viewed as privileged communications.' " (*Rusheen*, *supra*, 37 Cal.4th at p. 1058.) "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Ibid*.) Further, "if the gravamen of the action is based on a communicative act, 'the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct.' " (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1272-1273.) White's complaint is very clear about the gravamen of its claims. White alleges that Maksimow "deliberately misled" the DLSE and the superior court "that she worked for the corporation as an employee," and she "supplied the years out of date [Encinitas] address." Put simply, White's claims against Maksimow are based on allegedly false *representations* she made to the DLSE and the superior court in official filings. The claims, therefore, are based on communicative acts rather than noncommunicative conduct.[9]

---

9    White also argues that his claims are based on Maksimow's purported act of "altering a document" in the course of obtaining the writ of execution. Civil Code section 47, subdivision (b)(2) specifically identifies the "intentional destruction or alteration of

18

2. *White Lacks Standing to Pursue a Cause of Action Seeking to Vacate the Judgment Against AWA, Inc. Based on Extrinsic Fraud*

We have not included White's cause of action seeking to vacate the judgment based on extrinsic fraud in our discussion of the claims covered by the litigation privilege, because an exception to the litigation privilege arises when a plaintiff seeks injunctive relief to vacate a judgment based on the theory that the judgment was obtained through extrinsic fraud. (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26 (*Home Ins. Co.*)[10] The exception at issue is narrow and applies only to causes of action seeking injunctive relief to set aside a judgment, not to causes of action seeking tort damages based on extrinsic fraud in obtaining a judgment. (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 844.) White's first cause of action specifically falls under this narrow exception to the litigation privilege because the relief it seeks is limited

---

physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence" as conduct not covered by the litigation privilege. Although White is not clear about the factual basis for his argument that Maksimow "alter[ed]" a document, and he has not pointed to any evidence that Maksimow did so, we note that White's counsel made a similar argument during the hearing on the special motion to strike in the trial court, referring to a form that Maksimow filled out to obtain a writ of execution on which she identified the defendant in the caption as "Alan White and Associates" instead of "Alan White & Associates, Inc." If this is the evidence that White intends to rely on to establish that Maksimow "altered" a document, the evidence fails, as it proves nothing more than that Maksimow filled out a new form in a certain way, not that she altered a preexisting document. Further, we note that even though Maksimow identified the defendant as AWA in the caption, she identified AWA, Inc. on the form as the judgment debtor.

10     As we have explained, our discussion of the cause of action for extrinsic fraud also covers the substantively identical cause of action for "injunction."

to the injunctive relief of vacating a judgment that Maksimow allegedly obtained through extrinsic fraud.[11]

However, even though the litigation privilege does not bar the cause of action seeking to vacate the judgment based on extrinsic fraud, White has failed to demonstrate a probability of prevailing on that claim for a different reason.[12] Specifically, White lacks standing to seek to vacate the judgment. The record is clear that the judgment obtained by Maksimow was against AWA, Inc., not against White's sole proprietorship AWA or against White personally. A party who is "legally 'aggrieved' by a judgment" may seek to vacate it. (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 13.) " 'One is considered "aggrieved" whose rights or interests are injuriously affected by the judgment. [Citations.] [The] interest " 'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment.' " ' " (*Ibid.*)

---

[11]  " 'Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding.' " (*Home Ins. Co.*, *supra*, 96 Cal.App.4th at pp. 26-27.) "Where a judgment has been obtained through extrinsic fraud it may be set aside, though long since final, by independent suit in equity." (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 595, italics omitted.)

[12]  As it was not adequately covered in the parties' initial appellate briefing, we asked the parties to provide us with supplemental briefing on the issue of whether White had demonstrated a probability of prevailing on the merits on his claim seeking to vacate the judgment against AWA, Inc. based on extrinsic fraud.

White cannot establish that he is legally aggrieved by the judgment for the purposes of seeking to vacate it, as the judgment was entered against AWA, Inc., not against him. Although White alleges that he was damaged by U.S. Bancorp's purportedly improper action of preparing to release his *personal* funds even though the judgment was against AWA, Inc.,[13] that harm was no more than a remote and improbable consequence of the judgment against AWA, Inc. Maksimow's judgment against AWA, Inc. does not give her the legal right to obtain White's personal funds. Therefore, if U.S. Bancorp was planning to release White's personal funds as a result of a writ of execution against AWA, Inc.'s funds, the resulting injury to White would have been the direct consequence of allegedly improper conduct by U.S. Bancorp. The injury would have only a remote tie to the fact that Maksimow received a judgment against AWA, Inc. White accordingly has not been aggrieved by the fact that Maksimow obtained a judgment against AWA, Inc., and he lacks standing to bring a claim to vacate that judgment based on extrinsic fraud.[14]

In sum, as we have concluded that the litigation privilege applies to White's tort claims against Maksimow, and White cannot demonstrate a probability of prevailing on

_____

[13]    Specifically White argues that "[h]e was the targeted victim of [Maksimow's] extrinsic fraud. U S Bank was going to give his money to the San Diego Sheriff's Department per the writ of execution."

[14]    Although his argument is not clear, White may be claiming that he is aggrieved because Maksimow purportedly obtained a writ of execution directed against him *personally* by means of extrinsic fraud. That argument fails because it misstates the facts. Documents in the record show that Maksimow's application for a writ of execution was directed against AWA, Inc. as the judgment debtor, not against White personally.

21

his attempt to vacate the judgment against AWA, Inc. based on extrinsic fraud, White has failed to satisfy his burden under the second prong of the anti-SLAPP analysis. Because Maksimow has met her burden under the first prong of the anti-SLAPP statute to establish that White's claims arise from protected activity, and White has not met his burden to make a prima facie case that he has a meritorious claim against Maksimow, we conclude on our de novo review that the trial court erred in denying the special motion to strike under the anti-SLAPP statute.

## DISPOSITION

The order denying the special motion to strike is reversed, and this matter is remanded with directions for the trial court to enter an order granting the special motion to strike.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.

22