Filed 5/8/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAMAR ADVERTISING COMPANY, | B279643 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS141216) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Amy Hogue, Judge.  Affirmed.


Gresham, Savage, Nolan & Tilden, Theodore K. Stream and Andrea Rodriguez, for Plaintiff and Appellant.


Mary C. Wickham, County Counsel, Elaine M. Lemke, Assistant County Counsel, Tracy Swann and Casey Yourn, Deputy County Counsel, for Defendants and Respondents.

_____

In 2008, a billboard owned by Lamar Advertising Company was blown over in a windstorm. Lamar rebuilt the billboard and was cited by the Los Angeles County Department of Regional Planning (Department) for violating County zoning ordinances. Lamar appealed the order. A Department hearing officer denied the appeal, and Lamar filed a petition for writ of mandate in the trial court. The trial court denied the petition. Lamar now appeals the ensuing judgment. Lamar argues that it was authorized to rebuild the billboard without interference by local authorities. We find no error and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *The Erection of the Billboard*

In 1967, the Department of Public Works granted a permit to Lamar's predecessor to erect a billboard in an unincorporated area of Acton in Los Angeles County (County) alongside the Antelope Valley Freeway.[1] Lamar later acquired ownership of the billboard. The structure consisted of ten wooden telephone poles supporting a sixty-foot advertising face.

In 1995, the County adopted an ordinance banning billboards in the area where Lamar's billboard was located. (Los Angeles County Code (LACC), § 22.44.126.) Under the ordinance, the subject billboard became a "non-conforming" structure with a five-year amortization period after which time Lamar had to either remove the billboard or secure a permit from the County allowing the billboard to remain. (LACC § 22.56.1540(B)(1)(d); see *National Advertising Co. v. County of Monterey* (1970)

---

[1] We use "billboard" in a colloquial sense because, as we discuss, this appeal involves the consideration of several terms in state statutes and a county ordinance. "Billboard" is not one of those terms but we acknowledge it has an everyday use.

1 Cal.3d 875, 878 ["zoning legislation may validly provide for the eventual discontinuance of nonconforming uses within a prescribed reasonable amortization period commensurate with the investment involved"].)

The five-year amortization period passed. Lamar did not secure a permit for the billboard to remain on the property, and the County did not seek to remove the billboard.

2.      *Lamar's Initial Interest in Upgrading*

In August 2007, the Department conducted an investigation into illegal billboards along the Antelope Valley Freeway. A Department employee observed that the posts supporting the subject billboard were "weathered" and "aged," and one had fallen down.

In early 2008, Lamar's real estate manager, Bruce Haney, inquired of a Department zoning enforcement officer, Daniel Geringer, about the guidelines for upgrading the billboard. Lamar sought to repair the structure's support mechanisms. Geringer told Haney that Lamar had to submit a Non-Conforming Review application to the Department in order to obtain permission to repair the billboard. Haney responded that "time, effort and funds" spent on such a review would be "pointless" given the local area was a billboard exclusion zone. Haney then asked what procedures were required for a billboard damaged or blown over due to environmental conditions. Geringer reiterated the previous procedure.

3.      *The Windstorm and Subsequent Repairs*

In November 2008, a windstorm blew over the billboard and toppled one of the support poles to which an electrical box was attached. A photo of the scene after the storm showed eight wooden poles connected to each other by three of the remaining

lateral wooden boards.  Lamar subsequently installed a new advertising face, new lateral supports, a new electrical box and wiring, and a new catwalk.  Five overhead lighting fixtures were replaced with three larger lighting fixtures installed below the advertising face.  The advertising face itself was redesigned to cover a smaller surface and rest on only seven poles.

In March 2009, Geringer observed a commercial vehicle working on the advertising face and support structures of the billboard.  In April 2009, the Department issued a Notice of Violation to the property owner stating that the billboard was in violation of local zoning ordinances.  In June 2009, the Department issued a Final Zoning Enforcement Order ordering the removal of the billboard.

4.    *The Administrative Appeal*

That month, Lamar appealed the Department's order, arguing that it was entitled to rebuild the billboard under California Code of Regulations (Regulations) section 2271, which provides that a billboard owner has 60 days to conduct repairs after receiving notice of damage from CalTrans.  The appeal proceeded to an administrative hearing.  The hearing officer suggested that Lamar submit a Non-Conforming Use Review application and Lamar agreed.  The hearing officer agreed to stay the administrative appeal while Lamar pursued its application.

5.    *The Non-Conforming Use Review Application*

In November 2009, Lamar submitted its application to the Department.  The Department prepared a draft order approving the billboard's continued non-conforming use with the condition that Lamar remove the billboard in five years.  Lamar rejected the proposed condition.  The Department then prepared a revised order approving Lamar's application on the conditions that

4

Lamar deposit $2,000 to compensate the Department for inspections, and indemnify the County for any action to annul the permit. Lamar rejected the proposed conditions and withdrew its application.

6. *The Resumption of the Administrative Appeal*

Three years later, Lamar resumed its administrative appeal. The hearing officer denied the appeal on the ground Lamar had failed to exhaust its administrative remedies. Lamar filed a petition for writ of mandate for the hearing officer to set aside its denial. The trial court remanded the matter to the hearing officer with instructions to supplement the decision with further findings and analysis.

In June 2014, the hearing officer adopted supplemental findings. The officer found that Lamar's re-erection of the billboard was a new "placement" under the Outdoor Advertising Act (the "State Act"), and violated the billboard exclusion zone. The officer rejected Lamar's claim that the placement of the new billboard was either "customary maintenance" under the State Act or repairs to a "partially destroyed or damaged structure" under LACC section 22.56.1510 such that the reconstruction of the billboard was exempt from local permitting requirements. The hearing officer denied the administrative appeal, concluding the billboard was completely destroyed because every element of the billboard aside from the poles had to be replaced.

7. *Lamar Files a Petition for Writ of Mandate Challenging the Findings*

In June 2016, Lamar filed a petition for writ of mandate challenging the hearing officer's affirmance of the Department's enforcement order. The trial court denied the petition holding: (1) The re-erection of the billboard was not "customary

5

maintenance" such that the State Act exempted the work from local and state regulation, but was rather a "placement" subject to local permitting requirements; and (2) Substantial evidence supported the hearing officer's finding that the billboard was completed destroyed, not "partially destroyed or damaged" and thus could not be repaired without a permit under LACC section 22.56.1510. Lamar timely appealed.

## DISCUSSION

1. *Standard of Review*

"The claim essentially attacks the [agency's] order as an abuse of discretion. Code of Civil Procedure section 1094.5 permits trial court review of quasi-judicial administrative decisions, that is, decisions that result when the agency has exercised its discretion and applied the governing regulations and law to a particular factual situation. For this purpose, an abuse of discretion is established if the respondent has not proceeded in the manner required by law, the decision is not supported by the findings, or the findings are not supported by the evidence. [Citation.] To the extent the question turns on factual disputes, we review the trial court's ruling in the light most favorable to the judgment, considering only whether it is supported by substantial evidence. [Citations.]" (*Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 256–257.) Where facts are undisputed or policy concerns are weighed, we review the administrative decision de novo. (*Ibid.*)

2. *State and Local Regulation of Billboards*

"The Outdoor Advertising Act (Bus. & Prof. Code, § 5200 et seq.)[2] [] regulates advertising displays (i.e., billboards) adjacent

---

[2]     All further statutory references are to the Business and Professions Code unless otherwise specified.

6

to interstate or primary highways in California."[3] (*D'Egidio v. City of Santa Clarita* (2016) 4 Cal.App.5th 515, 518 (*D'Egidio*).) CalTrans is responsible for enforcing the State Act. (§§ 5250–5254.) However, its authority is not exclusive. (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 444.) Section 5230 authorizes local agencies to impose restrictions on billboards that are equal to or greater than those imposed by the State Act if imposed in compliance with section 5412. (*Ibid.*) Section 5412 provides that, "no advertising display which was lawfully erected anywhere within this state shall be compelled to be removed, nor shall its customary maintenance or use be limited . . . without payment of compensation . . . ."[4]

Under section 5412, once a billboard is erected, the owner may undertake "customary maintenance" without interference from local authorities unless the owner is compensated for any loss. "Customary maintenance" is defined in Regulation 2270 as "any activity performed" on an advertising display "for the purpose of actively maintaining the Display in its existing

---

[3] An " 'advertising display' refers to advertising structures and to signs." (§ 5202.)

[4] Section 5412 provides: "Notwithstanding any other provision of this chapter, no advertising display which was lawfully erected anywhere within this state shall be compelled to be removed, nor shall its customary maintenance or use be limited, whether or not the removal or limitation is pursuant to or because of this chapter or any other law, ordinance, or regulation of any governmental entity, without payment of compensation, as defined in the Eminent Domain Law . . . ."

approved physical configuration and size dimensions at the specific location" approved on the CalTrans permit.[5]

The State Act expressly recognizes local authorities' power to regulate the "placement" of a billboard. (E.g., §§ 5229, 5231.) For example, section 5231 allows local authorities to require a permit for placement of a sign. The State Act defines "placement" as not only erecting, but "maintaining" billboards. (§ 5225.) " 'Maintaining' necessarily takes place *after* the initial construction of the billboard, and such activity is excluded from the definition of 'placement' only if it constitutes 'customary maintenance.' Therefore, re-erection amounts to a 'placement' of the billboard. [Citations.]" (*Viacom Outdoor, Inc. v. City of Arcata* (2006) 140 Cal.App.4th 230, 243 (*Viacom*).) Thus, under state law, a municipal authority may require a billboard owner to obtain a permit before reconstructing a billboard blown over in a storm. (*Id.* at pp. 246–247.)

3.    *The Trial Court Properly Denied the Petition for Writ of Mandate*

On appeal Lamar claims the trial court's judgment is wrong under both state and local law. First, Lamar argues that the rebuilding of the billboard constituted "customary maintenance" protected by the State Act, not a "placement" subject to local

---

[5]    Regulation 2270 provides: " 'Customary maintenance' means any activity performed on a Display for the purpose of actively maintaining the Display in its existing approved physical configuration and size dimensions at the specific location approved on the application for State Outdoor Advertising Permit, or at the specific location officially recorded in the records of the Department for a legally placed Display, for the duration of its normal life."

permitting requirements. According to Lamar, the trial court's finding that the billboard was completely destroyed and, therefore, was re-erected as a new "placement," was both based on an erroneous interpretation of "destroyed" and was not supported by substantial evidence. Lamar also argues that LACC section 22.56.1510 specifically authorized it to conduct repairs. Lamar contends that, as defined in that ordinance, its rebuilding of the billboard constituted routine repairs to a "damaged" or "partially damaged" billboard. (LACC § 22.56.1510(G).) We find neither argument persuasive.

Many of Lamar's arguments are predicated on its interpretation of the word "destroyed" and other terms used in the applicable statutes and the county ordinance. As to the State Act, we ultimately conclude that Lamar's re-erection of the billboard was a statutory "placement." As to the County ordinance, we conclude that, under the plain and ordinary meaning of "destroyed" under LACC section 22.56.1510, substantial evidence supports the finding that the windstorm destroyed the billboard. In light of these interpretations, we conclude the billboard's reconstruction was properly subject to the County's permitting requirements, and the trial court's ruling was correct.

A.      The State Act and Regulations

Lamar argues that the work done on its billboard qualifies as "customary maintenance" and not a new placement under two regulations and the State Act itself. We address each separately.

i.      *Regulation 2270*

Lamar contends that section 5412 prohibited the County from regulating the rebuilding of the billboard without compensation. Specifically, Lamar argues that the re-erection of

9

the billboard was not a "placement" but fell within section 5412's definition of "customary maintenance."  According to Lamar, section 5412 prohibited the County from "limiting" the repairs through a permit process.

In support, Lamar cites to Regulation 2270 which defines "customary maintenance" as used in section 5412 as "any activity performed on a Display for the purpose of actively maintaining the Display in its existing approved physical configuration and size dimensions at the specific location approved on the application for State Outdoor Advertising Permit . . . for the duration of its normal life."  Subdivision (a) of Regulation 2270 specifies activities included in "customary maintenance," such as "changing of the advertising message" or "adding a light box."**6**  (4 C.C.R. § 2270(a).)  Subdivision (b) specifies that "customary does *not* include . . . [for example,] increasing any dimension of a facing . . ."**7**  (4 C.C.R. § 2270(b) (emphasis added).)

---

**6**     Regulation 2270(a) provides:  "Customary maintenance includes the following activities:  (1) Changing of the advertising message. (2) Adding an Extension to an outside dimension of a Display as incident to the copy for a temporary period up to three years. (3) The sale, lease, or transfer of the Display or its Permit. (4) Adding a Light Box."

**7**     Regulation 2270(b) provides:  "Customary does not include the following (all of which acts are considered as a 'placing' of a new advertising Display): (1) Raising the height of the Display from ground level. (2) Relocating all or a portion of a Display. (3) Adding a back-up Facing to a single Facing Display. (4) Increasing any dimension of a Facing except as permitted by Section 2270(a)(2). (5) Turning the direction of a Facing. (6) Adding illumination or a Changeable message, including, but not limited to, 'tri-vision' signs, with the exception of a light box."

Lamar argues that its reconstruction of the billboard was "customary maintenance" under Regulation 2270 because (1) Lamar installed a *smaller* wood surface and Regulation 2270's definition excludes "increasing any dimension of a facing" (4 C.C.R. § 2270(b)); and (2) adding a light box is expressly included as customary maintenance (4 C.C.R. § 2270(a)).

We conclude that Lamar's reconstruction of the billboard did not "actively maintain[] the Display in its existing approved physical configuration and size dimensions," and therefore, did not constitute customary maintenance under Regulation 2270. First, Lamar's argument that the definition automatically allows erecting a smaller billboard face on fewer posts than approved by the state permit is belied by the regulation's mandate that the customary maintenance not alter the billboard's existing "size dimensions" or approved "physical configuration."

Second, although Lamar argues that its addition of an electrical box is equivalent to the addition of a "light box" allowed under the customary maintenance definition, the regulations elsewhere define "light box" as a "sign cabinet" that has a lighted message. (4 C.C.R. § 2242(q).) Accordingly, Lamar's addition of an electrical box does not qualify as a "light box" that a billboard owner may add as part of customary maintenance.

Third, Lamar's repairs were not merely incidental to erecting a smaller billboard, but included new lighting, a new electrical box and wiring, new lateral supports, and a new catwalk. Essentially, the repairs replaced and upgraded the entire display mounted on the posts. Because of Lamar's alteration of the size dimensions and addition of several new components to the physical configuration, the reconstruction of

11

the billboard did not fall within Regulation 2270's definition of "customary maintenance."

## ii. *Regulation 2271*

Lamar next cites Regulation 2271. Regulation 2271 provides that a billboard "is destroyed and not eligible for customary maintenance when for 60 days after notice from [CalTrans], it remains damaged and is not used for the purpose of outdoor advertising in the configuration . . . approved by [CalTrans]."[8] (4 C.C.R. § 2271(a).)

Lamar acknowledges that Regulation 2271 deals with the procedures for maintaining a CalTrans permit, but argues that the regulation also sets forth the definition of "destroyed" as used in the State Act generally and inferentially as used in the county ordinance. Specifically, Lamar argues that, under Regulation 2271, a billboard is only destroyed if it is not rebuilt within 60 days of notice from CalTrans. Its billboard was not "destroyed" because Lamar repaired the billboard "prior to even receiving a notice from CalTrans." Lamar then concludes that because the billboard was not destroyed, the reconstruction was not a placement, but only customary maintenance. We disagree.

Regulation 2271 does not purport to define when a billboard is only damaged and not destroyed. "Regulation 2271 addresses only certain circumstances that will not result in loss of a CalTrans permit." (*Viacom*, *supra*, 140 Cal.App.4th at p. 242.) It follows that the regulation does not address the

---

[8] Regulation 2271(a) provides: "A Display is destroyed and not eligible for customary maintenance when for 60 days after notice from the Department, it remains damaged and is not used for the purpose of outdoor advertising in the configuration (size, Facings, location, structure) approved by the Department."

County's requirement that Lamar apply for a permit prior to rebuilding the billboard. At most Regulation 2271 defines conditions under which a billboard is deemed "destroyed" under the State Act. It does not purport to define the term for all purposes. Rather, Regulation 2271 creates a limited exception to an owner's right to conduct customary maintenance: the owner forfeits the right of customary maintenance if the owner has not responded in a timely manner to a CalTrans notice of damage.

       iii.    *The State Act's Definition of "Advertising Display"*

Lamar next argues that the trial court used an incorrect definition of "advertising display" under the State Act when it concluded the billboard was destroyed and "not eligible for customary maintenance." The State Act expressly regulates "advertising displays," which is the term one court has equated for the common term billboard. (*D'Egidio*, *supra*, 4 Cal.App.4th at p. 518.) Here, the trial court concluded that because the entire advertising display fell over in the windstorm, the billboard was completely destroyed and its re-erection was a placement. Lamar argues that an "advertising display" is reasonably interpreted as the entire billboard structure, including the support poles. Under its interpretation, because some of the support poles did not fall over in the windstorm, the advertising display was not completely destroyed. We disagree.

The State Act uses the term advertising display as follows. An " 'advertising display' refers to advertising structures and to signs." (§ 5202.) An "advertising structure" "means a structure of any kind or character erected, used, or maintained for outdoor advertising purposes, upon which any poster, bill, printing, painting or other advertisement of any kind whatsoever may be

13

placed . . . ." (§ 5203.) "The verb, 'to place' and any of its variants, as applied to advertising displays, includes the maintaining and the erecting, constructing, posting, painting, printing, tacking, nailing, gluing, sticking, carving or otherwise fastening, affixing or making visible any advertising display on or to the ground *or* to any tree, bush, rock, fence, *post*, wall, building, structure or thing." (§ 5225 (emphasis added).)

We interpret the above provisions to define an "advertising display" as a "structure" with a flat surface "upon" which an advertisement is "placed." (§§ 5202 & 5203.) Section 5225, in turn, provides that an "advertising display" is "place[d]" when it is "affix[ed]" "to any . . . post." Accordingly, the statute clearly distinguishes the "advertising display"—the flat structure displaying the advertisement—from the posts upon which it is mounted.

Here, Lamar replaced the billboard mounted upon the posts. In other words, it replaced the entire "advertising display." This interpretation belies Lamar's claim that it only engaged in "customary maintenance" of the existing billboard. We agree with our colleagues in the First District that "re-erection amounts to a 'placement' of the billboard" under the State Act, and is properly subject to local permitting requirements. (*Viacom*, *supra*, 140 Cal.App.4th at p. 243.)

B.     LACC Section 22.56.1510

Lamar argues that, even if the State Act authorized the County generally to regulate the reconstruction of its billboard, the County's own ordinance exempted Lamar's reconstruction from the permitting process. Lamar cites to LACC section 22.56.1510 which provides: "Any building or structure nonconforming due to use and/or standards which is *damaged or*

14

*partially destroyed* may be restored to the condition in which it was immediately prior to the occurrence of such damage or destruction, provided:  (1) that the cost of reconstruction does not exceed 50 percent of the total market value of the building or structure . . .; and (2) that all reconstruction shall be started within one year from the date of the damage and be pursued diligently to completion."  (LACC § 22.56.1510(G) (emphasis added).)

Lamar contends that this ordinance *defines* when a structure is "damaged" or "partially destroyed" such that repairs "may be" performed subject to the cost and time limitations. Lamar refines its argument as follows:  "if repairs to a non-conforming structure satisfy these two requirements"—(1) the cost does not exceed 50 percent of the fair market value, and (2) repairs are started within a year of the date of the damage— "by definition, the structure is simply 'damaged' or 'partially destroyed' and reconstruction is expressly authorized."  Lamar points out that because its repairs were indisputably less than 50 percent of the billboard's fair market value and begun in a timely fashion, the billboard was only "damaged or partially destroyed," and Lamar needed no permit.

We disagree that LACC section 22.56.1510 defines the terms "damaged" or "partially destroyed."  Rather, the ordinance defines *the conditions* under which repairs may be performed on a non-conforming structure that *is* damaged or partially destroyed.  Whether a billboard is damaged or partially destroyed is subject to the word's plain and ordinary meanings unless otherwise defined in the local provisions.  (*C.Y. Development Co. v. City of Redlands* (1982) 137 Cal.App.3d 926, 929 ["The construction of a municipal initiative or ordinance is governed by

the same rules as the construction of statutes. . . . As a general rule, the court must interpret a statute by looking to the plain meaning of the words of the statute."].)

"Destroy" is commonly understood to mean "to render ineffective or useless." (Dictionary.com <http://dictionary.com> [as of May 8, 2018] (citing Random House Dictionary (2018)) (entry for "destroy," 4th definition).) Here, we conclude that the plain and ordinary meaning of "destroyed" as used in LACC section 22.56.1510 means damaged to the extent the billboard entirely loses its functionality. When the ordinance is properly defined, substantial evidence supports the trial court's finding that the billboard was destroyed. The billboard could no longer function in any way as an advertising surface. In fact, the billboard was unrecognizable as such after the windstorm, but consisting only of some remaining telephone posts and lateral boards. There was no message for the motoring public to see. The evidence showed that after the windstorm, Lamar replaced the entire advertising display mounted upon the posts. This constituted substantial evidence that the billboard had been completely "destroyed," not just "damaged" or "partially destroyed." Thus, LACC section 22.56.1510 did not exempt the billboard from the County's permitting requirements.

/ / /

/ / /

16

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.



RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.